691 F.2d 725
 11 Fed. R. Evid. Serv. 1522
 UNITED STATES of America, Plaintiff-Appellee,
v.
1964 BEECHCRAFT BARON AIRCRAFT, TC-740, FAA REG., NO.
N444CP, ACTUAL NO. N914C, its tools, equipment and
appurtenances, Defendant,
Charles M. Preston, Appellant.
 No. 81-1569
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 12, 1982.
 Michael P. Carnes, Dallas, Tex., for appellant.
 Cheryl B. Wattley, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before CLARK, Chief Judge, RUBIN and JOHNSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Charles Preston appeals from the judgment of forfeiture against his 1964 Beechcraft Baron airplane. The district court found that probable cause existed to believe that the aircraft was used to transport a quantity of phenyl-2-propanone (P2P) for the intended purpose of manufacturing or producing amphetamines or methamphetamines. The aircraft was ordered forfeited pursuant to 21 U.S.C. § 881(a)(4). The appellant alleges that there was insufficient evidence to make a finding of probable cause and that certain investigative reports were entered in violation of Rule 803 of the Federal Rules of Evidence. We disagree and affirm the lower court.
 
 
 2
 Preston was the owner of a 1964 Beechcraft Baron aircraft. He was also apparently a friend of Richard Lee Sullivan. In January, 1978, Sullivan met with agents of the Drug Enforcement Agency who were investigating the manufacture of amphetamines and methamphetamines. During that meeting, Sullivan asked the agents for P2P, which is used to manufacture amphetamines and methamphetamines. Two weeks later, Sullivan met again with the agents in a bar in Clovis, New Mexico. It is here that Preston first entered the picture as Sullivan's consort. Preston drove Sullivan to this Clovis meeting in his jeep. Though Preston took no part in the negotiations between Sullivan and the agents, he also drove Sullivan back to Amarillo, Texas, after Sullivan had obtained 500 grams of P2P from the agents.
 
 
 3
 Preston reappeared with Sullivan in March when he flew Sullivan to Abilene in his Beechcraft Baron. There, Sullivan met two undercover agents who delivered to Sullivan a five-gallon can filled with P2P and an electronic device that emitted a signal that could be tracked. The agents testified at trial that they saw Sullivan take the five-gallon container to Preston's airplane. He walked behind the aircraft and then walked away from the plane empty-handed. The two men flew away from the airport shortly thereafter with Preston piloting the aircraft. Two agents waiting at the Amarillo airport testified that they saw Sullivan, container in hand, and Preston leave the aircraft.
 
 
 4
 Agents, using the signals from the device planted in the container, then traced it to Customized Services, a business in Amarillo owned by Preston. A later search of that facility failed to recover the container. Preston acknowledged that he destroyed the container and the P2P.
 
 
 5
 The United States government sought the forfeiture of Preston's aircraft under 21 U.S.C. § 881(a)(4). That section specifies that "all conveyances, including aircraft, vehicles, or vessels which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment" of all controlled substances or raw materials, products or equipment used or intended for use in the manufacture of any controlled substance may be forfeited to the government. The trial court found that probable cause existed to believe that the aircraft was used for the transportation of raw materials which were intended for use in the manufacture of a controlled substance.
 
 
 6
 Preston raises two issues on appeal: (1) that the trial court used an improper standard in determining whether probable cause existed and, when the proper standard is used, the evidence is insufficient to support the verdict; and (2) that several DEA reports were admitted into evidence in violation of the hearsay rule.
 
 
 7
 In bringing this forfeiture action, the government has the burden of establishing that probable cause exists to believe that the vehicle subject to forfeiture was used in the transportation of the raw materials intended for use in the manufacture of a controlled substance. Vance v. United States, 676 F.2d 183, 187 n.7 (5th Cir. 1982). The probable cause standard to be used in actions brought under § 881(a)(4) is whether there is "a reasonable ground for belief of guilt supported by less than prima facie proof but more than mere suspicion." United States v. One 1979 Mercury Cougar XR-7, 666 F.2d 228, 230 n.3 (5th Cir. 1982). A § 881 forfeiture is proper if the vehicle in question was used "in any manner" to facilitate the sale or transportation of a controlled substance or raw material used in the manufacture of a controlled substance. Id. at 230.
 
 
 8
 Preston urges this court to adopt a stricter forfeiture standard-that there must be a "substantial connection" between the vehicle to be forfeited and the criminal activity. For this proposition, he cites United States v. $364,960.00 in United States Currency, 661 F.2d 319 (5th Cir. 1981), which interprets § 881(a)(6), a complementary provision to the one at issue here. Section 881(a)(6), which authorizes the government to bring forfeiture actions against money or other things of value negotiated in exchange for drugs, was added in 1978. Psychotropic Substances Act, Pub.L. No. 95-633, § 301(a)(1), 92 Stat. 3768 (1978). That amendment's legislative history uses the "substantial connection" language which the court correctly relied upon in United States v. $364,960.00 in United States Currency. However, that amendment's legislative history makes no mention of using the same test for other forfeiture actions and the legislative history of § 881 is devoid of any mention of a "substantial connection" test. H.Rep.No.1444, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 4566. Preston argues that both the money seized in $364,960 and the airplane in this case are "derivative contraband" and therefore should be treated similarly. But Preston can offer no persuasive proof that Congress intended to change the test to be used in the body of the forfeiture statute when it added Section 881(a)(6). Such an interpretation would be contrary to 1979 Mercury Cougar, supra, which allows forfeiture of vehicles which are used "in any manner" in the transportation or facilitation of transportation of controlled substances or their raw materials. That decision suggests a far more liberal standard than the one urged here by Preston. The "substantial connection" standard does not apply to § 881(a)(4).
 
 
 9
 Given that "use in any manner" to facilitate the sale or transportation of a controlled substance raw material is the proper test, it is clear that the government established at trial that probable cause existed to forfeit the airplane. The trial testimony and exhibits confirm that undercover agents gave a five-gallon container reportedly containing P2P to Sullivan. Sullivan walked to Preston's airplane with the can and then walked away without it. He was later seen with Preston in Amarillo walking from the airplane carrying that same container. The aircraft was used as a means of travelling to the meeting between Sullivan and the agents. At that meeting, Sullivan obtained the P2P necessary to manufacture the controlled substance. It was Preston's aircraft that allowed Sullivan to make his appointment and it was Preston's aircraft that carried the man and container back to Amarillo. Contrary to Preston's assertions, it is immaterial that the plane was never flown to Albuquerque (where the laboratory was located) or that amphetamines or methamphetamines were never transported in the plane. Viewing the evidence in the light most favorable to the government, we affirm the lower court's finding of probable cause. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).
 
 
 10
 Preston's second contention is that ten exhibits were improperly admitted into evidence by the trial judge. Preston argues that the reports and documents admitted were inadmissible hearsay. Even if the documents do not fall within the hearsay exceptions in Rule 803(8) of the Federal Rules of Evidence, and we believe they do, the government in this case need only prove probable cause. Probable cause may be proved with hearsay evidence. Bush v. United States, 389 F.2d 485, 489 (5th Cir. 1968). The documents were properly admitted.
 
 
 11
 AFFIRMED.