869 F.2d 942
 UNITED STATES of America, Plaintiff-Appellee,
v.
LOTS 12, 13, 14, AND 15, KEETON HEIGHTS SUBDIVISION, MORGAN
COUNTY, KENTUCKY, Defendant,
Gene Allen and Bernice Allen, Claimants-Appellants.
 No. 87-5298.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 8, 1988.
Decided March 10, 1989.
 
 Jerry Anderson (argued), Lexington, Ky., for claimants-appellants.
 Louis DeFalaise, U.S. Atty., Michael R. Baer (argued), Lexington, Ky., for plaintiff-appellee.
 Before KEITH, WELLFORD and NELSON, Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The Comprehensive Crime Control Act of 1984 amended the civil forfeiture provisions of the Controlled Substances Act by the addition of a provision, codified at 21 U.S.C. Sec. 881(a)(7), authorizing the forfeiture to the United States of all real property used or intended to be used in any manner to commit, or facilitate the commission of, certain drug offenses. The forfeiture provision contains an exception with respect to the ownership interest of a person who establishes that the act on which the forfeiture is predicated was committed without that person's knowledge or consent.
 
 
 2
 The case before us is a real property forfeiture proceeding in which the most significant issue presented is whether the "innocent owner" exception of Sec. 881(a)(7) prevents entry of summary judgment against a wife whose husband used or intended to use jointly owned property in a manner warranting forfeiture, where the wife has filed a timely verified claim asserting that she is the innocent owner of an undivided half interest in the property and the government has not suggested the absence of a genuine factual issue as to the wife's innocence. We conclude that summary judgment may not be entered against the wife under these circumstances.
 
 
 3
 * In 1973 Eugene Allen and his wife, Bernice Allen, acquired ownership of four consecutively numbered subdivision lots in Morgan County, Kentucky. In 1985, at a time when Eugene Allen was the "judge," or county executive, of Morgan County, the Allens still owned the property, which was improved by a residence in which they lived.
 
 
 4
 Judge Allen became the target of an investigation of public corruption in Eastern Kentucky. On October 30, 1985, an undercover government agent named McNeal, who was posing as a drug dealer, tape recorded a conversation he held with Judge Allen and a man named Titus Frederick. As subsequently reported by Special Agent David Keller, who debriefed McNeal the following day, the conversation disclosed that Judge Allen and Titus Frederick had made "millions of dollars" in the drug trade and might still be dealing in drugs.
 
 
 5
 Judge Allen was told that he could earn $5,000 each month "for the protection aspects" of a drug running operation McNeal proposed to initiate. In the course of the conversation Judge Allen reportedly said, among other things, that he was being pressured by an attorney with whom he dealt to come up with two kilograms of cocaine; that if McNeal would fly cocaine up from Florida, he could land it at the airport at West Liberty, Kentucky, near the Allens' home; that Allen and Titus Frederick, armed with machine-guns, would meet the plane and take the cocaine to the Allen residence for testing; that Allen would not hesitate to use his machine-gun and "blow someone's ass away" if there were any trouble; that a Captain Campbell could have state troopers blocking the road to the airport; that Roger Benton, the local sheriff, was being paid off and would cause no problems--but if he did, Judge Allen "would call Captain Campbell and have Campbell get him killed by some of his boys;" and that only Judge Allen, his wife and son, and Titus Frederick would be at the house when the cocaine arrived.
 
 
 6
 On November 20, 1985, according to Keller's subsequent affidavit, McNeal and another undercover agent flew into the West Liberty airport with two kilograms of cocaine. McNeal was again wired with a body recorder and a transmitter. Judge Allen and Titus Frederick met the plane in a pickup truck, armed with shoulder weapons, and Allen drove the supposed drug dealers to his nearby house. Judge Allen's son was at home when they arrived. The son was dispatched to the airport to pick up a man whom McNeal identified as a buyer from Indiana. After he arrived at the Allen house, the "buyer" (who was in fact another undercover agent) counted out $90,000 in cash to pay for the cocaine. The cocaine was tested for purity with Clorox. Judge Allen drove McNeal and Titus Frederick back to the airport after the sham transaction was completed, and the son drove the others back.
 
 
 7
 The undercover agent who accompanied McNeal gave Special Agent Keller a similar account of the incident. The second agent provided additional details, however, including the fact that Judge Allen "insisted that the cocaine transaction be completed at his residence because it was safe at his home."On March 12, 1986, Judge Allen, Sheriff Roger Benton, Captain Campbell, Titus Frederick, and Judge Allen's son were indicted by the United States for various felonies. Judge Allen's wife was not indicted, as far as the record before us discloses, and nothing said in Special Agent Keller's affidavit indicates that she had been present at the Allen house on the day of the staged drug transaction.
 
 II
 
 8
 On March 14, 1986, the United States instituted the present in rem action seeking forfeiture of the Allens' real estate on the grounds, inter al., that it had been used, or was intended to be used, to commit or facilitate the commission of a felony in violation of Title 21, and was thus subject to forfeiture under 21 U.S.C. Sec. 881(a)(7). The complaint also cited 21 U.S.C. Sec. 881(a)(6), which provides for forfeiture of property furnished in exchange for a controlled substance, as well as forfeiture of all proceeds traceable to such an exchange.
 
 
 9
 In accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims--which Rules, according to Supp.Rule A, "apply to the procedure in statutory condemnation proceedings analogous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not"--the district court reviewed the complaint, found that the conditions for an action in rem appeared to exist, and, pursuant to Fed.R.Civ.P.Supp. Rule C(3), issued an order authorizing a warrant for the "arrest" of the Allens' property.
 
 
 10
 Copies of the warrant of arrest and a notice of arrest and seizure were posted on the front door and front porch of the Allen house by a United States marshal. The marshal also served Bernice Allen personally. A stipulation permitting Mrs. Allen and her dependents to continue living at the residence was executed, and the Allens obtained an extension of time for filing the claims contemplated by Fed.R.Civ.P.Supp. Rule C(6).
 
 
 11
 Verified claims were filed by both Judge and Mrs. Allen on the appointed day. Each claim asserted that the claimant owned an undivided half interest in the subject property as a tenant in common, and each claim asserted that the claimant was "an innocent owner ... as defined by the statutes of the United States and case law and stated legislative intent of the Congress of the United States."
 
 
 12
 Within the time allowed for service of an answer, counsel for Judge and Mrs. Allen moved to dismiss the complaint for want of a "substantial connection" between the property and the alleged criminal activity. The motion--which was not supported by affidavit or other proof--was opposed by the government as "premature."
 
 
 13
 The district court held a hearing and pretrial conference, the upshot of which was that the claimants were given 30 days to move for summary judgment. A summary judgment motion was thereafter filed on behalf of both claimants, supported by an affidavit of Judge Allen.
 
 
 14
 The affidavit said that the Allens had purchased the subject property in "1976;" that it was mortgaged to a West Liberty bank; and that since 1976 mortgage payments had been made with income from farming, leases, Judge Allen's salary, and the proceeds of bank loans. The affidavit went on to describe very briefly the contents of four surreptitiously made tape recordings that Judge Allen had obtained through discovery. Tapes of the conversations of October 30 and November 20 were among them.
 
 
 15
 Referring to the events of November 20, 1985, Judge Allen's affidavit affirmatively showed that he had knowledge of the use to which his house was to be put, and that therefore he could not be an "innocent owner" under the statute:
 
 
 16
 "5. The affiant arrived at the airport as the Government plane was landing. Titus is already there. When the Government agents arrive they tell the affiant of their plan to sell cocaine to some Indiana people. At no time did this affiant possess the cocaine. The cocaine was brought into his home by Government Agents. The money given to Government Agents in exchange for the cocaine was brought into his house by Government Agents. The affiant received no money, no cocaine or anything during the exchange between the government agents.
 
 
 17
 6. Prior to this date the affiant had been told that there would be a dry run or test run. The affiant did not believe real cocaine would be used."
 
 
 18
 In a brief accompanying their motion for summary judgment, the Allens argued that the property was not subject to forfeiture under 21 U.S.C. Sec. 881(a)(6) because the real estate did not constitute "proceeds traceable to [an exchange for a controlled substance]" within the meaning of those terms as used in subsection six. That issue is no longer of concern here.
 
 
 19
 The brief further argued that the property was not subject to forfeiture under Sec. 881(a)(7), because the drug transaction had been negotiated at Titus Frederick's house and there was no antecedent connection between the Allens' property and the transaction in question. Moreover, the brief argued, Judge Allen believed originally that the November 20 transaction would merely be a test run:
 
 
 20
 "It was only minutes before the transaction occurred that Mr. Allen learned the transaction was 'live' and that real cocaine was to be exchanged for money in his presence. Since Mr. Allen had no intent for an illegal transaction to take place in his home that night, the forfeiture cannot stand based on that transaction.
 
 
 21
 The Governments [sic] introduction of real cocaine into this transaction was merely an attempt by the Government to create a drug crime."
 
 
 22
 Next, the brief argued, there could be no "significant connection" between the Allens' house and the illegal drug transaction "[s]ince the house was not used to hold any contraband and was only the site of transfer...." Finally, it was asserted, the transaction was not a violation of the law because it was a sham conducted by government agents acting within the scope of their investigation.
 
 
 23
 The government then filed a cross-motion for summary judgment. The supporting brief, which was also a response to the claimants' summary judgment motion, contended that Judge Allen's affidavit and brief showed that no genuine issues of material fact existed. The government's summary judgment motion was supported by an affidavit in which Special Agent Keller recited the facts outlined in Section I of this opinion. Like the Allens' summary judgment motion, the government's cross-motion failed to address Mrs. Allen's "innocent owner" defense.
 
 
 24
 After oral argument, the district court filed an opinion reviewing the undisputed facts and concluding that the government had shown reasonable grounds to believe that the property was used, or was intended to be used, for prohibited purposes. The Allens, the opinion continued, "have not shown that the property is not subject to forfeiture [under 21 U.S.C. Sec. 881(a)(7) ], nor have they offered any applicable legal defense thereto." The opinion did not mention the verified claim in which Mrs. Allen had asserted that she was an "innocent owner."
 
 
 25
 The court's opinion was accompanied by a final order granting the government a summary judgment against the defendant real estate, ordering that "the claimants, Gene and Bernice Allen, husband and wife, shall hereby forfeit to the United States of America any and all right, title and interest in the defendant real property," and ordering that the government dispose of the property in accordance with the law. The Allens perfected a timely appeal.
 
 III
 
 26
 As far as Judge Allen's interest in the property is concerned, the district court was undoubtedly correct in ordering a forfeiture. Judge Allen argues here, as he did in the district court, that no criminal drug transaction was consummated in his house because, although he did not realize it at the time, the "buyer" and "seller" were government agents acting with full authorization for what they did. This argument, it seems to us, ignores the plain language of the statute.
 
 
 27
 Under 21 U.S.C. Sec. 881(a)(7) the property subject to forfeiture includes:
 
 
 28
 "All real property ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment...." (Emphasis supplied.)
 
 
 29
 The property need not actually have been used to facilitate the commission of a felony if it is "intended to be used" in any manner for that purpose. Judge Allen unquestionably intended that his home be used for felonious purposes. That intent had to have been formed no later than the point at which, Judge Allen having learned that "the transaction was 'live' in that real cocaine was to be exchanged for money in his presence," Allen "insisted that the cocaine transaction be completed at his residence because it was safe in his home."
 
 
 30
 Intent is determinative, under the statute. See United States v. One 1980 Cadillac Eldorado, 705 F.2d 862 (6th Cir.1983), where, in applying a cognate provision in 21 U.S.C. Sec. 881(a)(4), we affirmed the forfeiture of an automobile that the owners intended to be used to facilitate the transportation of "cocaine" that turned out to be a sham substance offered by an undercover agent. Emphasizing that the statute applies to conveyances which are used "or are intended for use" to facilitate transportation of illicit drugs, we held that "intent is the determining factor...." Id. at 862-63.
 
 
 31
 If, as we held in United States v. Premises Known as 8584 Old Brownsville Road, 736 F.2d 1129, 1130 (6th Cir.1984), following United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), statutory language that is unambiguous must ordinarily be regarded as conclusive, in the absence of a clearly expressed legislative intent to the contrary, then only one conclusion was possible in One 1980 Cadillac Eldorado, just as only one conclusion is possible here. Both subsections (4) and (7) of 21 U.S.C. Sec. 881(a) use the disjunctive rather than the conjunctive; they speak of property that is used for a forbidden purpose "or" property that is "intended" to be so used. We have been given no reason to suppose that when Congress said "or" it meant "and."
 
 
 32
 Under the controlling statutes, the government did not even have to sustain the burden of actually establishing that the property was intended to be used for a forbidden purpose. 21 U.S.C. Sec. 881(d) makes the instant proceeding subject to the provisions of law relating to forfeiture of property for violation of the customs laws, and one of those provisions says that if "probable cause" is shown for the institution of a forfeiture suit, the burden of proof shall lie not on the government, but upon any claimant to the property. 19 U.S.C. Sec. 1615. See United States v. Fifty Thousand Dollars ($50,000) U.S. Currency, 757 F.2d 103, 105 (6th Cir.1985).
 
 
 33
 The papers that were before the district court in this case unquestionably showed probable cause to believe that Judge Allen intended his house to be used to facilitate the transfer of two kilograms of cocaine. Under 19 U.S.C. Sec. 1615 the burden of proof lay upon Judge Allen to show that he acted without the prescribed intent--and it is clear to us, as it was clear to the district court, that Judge Allen failed to demonstrate the existence of any genuine issue as to any fact or facts that would enable him to sustain that burden. The entry of summary judgment against Judge Allen was manifestly correct.
 
 IV
 
 34
 The argument pressed most vigorously on this appeal is one that was not presented in the Allens' own motion for summary judgment; namely, that Bernice Allen's ownership interest in the property was not subject to forfeiture because, in the words of her brief, Mrs. Allen "was not involved in or aware of the illegal behavior and had done all that [she] could be reasonably expected to do to prevent the offensive use of her property."
 
 
 35
 The assertion that Mrs. Allen had done all that could reasonably be expected of her is an assertion never advanced before the trial court. The assertion was doubtless inspired by dicta in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974), where the Supreme Court suggested that it might be unconstitutional to forfeit the property "of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property...."
 
 
 36
 The constitutional question is not presented here, because the statute with which we are concerned imposes no requirement that a person who claims the status of an "innocent owner" establish that he has done all that he could reasonably be expected to do to prevent the proscribed use of his property. It is enough, under the statute, that the owner establish that the proscribed act was committed "without the knowledge or consent of that owner."
 
 
 37
 Although Mrs. Allen did not establish her lack of knowledge or consent in her summary judgment papers, the issue had been raised in her verified claim--and the government having failed to suggest that there was no evidence to support her "innocent owner" defense, the issue did not drop out of the case when Mrs. Allen's summary judgment motion was denied. See Huffman v. Western Nuclear, Inc., --- U.S. ----, ---- n. 11, 108 S.Ct. 2087, 2093 n. 11, 100 L.Ed.2d 693, 703 n. 11 (1988) ("DOE's successful opposition of respondents' motion [for summary judgment] is insufficient to establish that it is entitled to summary judgment in its favor").
 
 
 38
 "Once the procedural requirements of Rule C(6) are met," as the Court of Appeals for the Seventh Circuit said in United States v. United States Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir.1985), "a claimant has standing to defend the forfeiture." Mrs. Allen complied with Rule C(6) by filing a verified claim asserting her "innocent owner" defense, and the pendency of her timely motion to dismiss kept her from being in default of an answer. Mrs. Allen's status as an innocent owner was squarely in issue, and the government was not entitled to prevail against her on its motion for summary judgment absent some reference to Mrs. Allen's defense and some indication that the defense had no evidentiary support. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).
 
 
 39
 The general Rules of Civil Procedure for the United States District Courts are applicable to statutory condemnation proceedings except to the extent that they are inconsistent with the Supplemental Rules. See Supp. Rule A, which so provides. Disposition of the government's motion for summary judgment was governed by Rule 56(c), Fed.R.Civ.P., and Rule 56(c) required the district court to render summary judgment against Mrs. Allen if and only if the pleadings and affidavits showed that there was no genuine issue as to any material fact and that the government was entitled to judgment as a matter of law. Mrs. Allen's status as an innocent owner was certainly material, as a statutory issue properly raised in the manner contemplated by Supp. Rule C(6), and the government simply was not entitled to obtain a summary judgment forfeiting Mrs. Allen's interest without first having pointed out to the district court (and to Mrs. Allen) that there was no evidence of a lack of knowledge by Mrs. Allen of the use that her husband intended to make of their house.
 
 
 40
 It is true, as the government says in its brief on appeal, that a claim of innocent ownership must be established by a party claiming the defense. Mrs. Allen's claim, although verified, is couched in purely conclusory terms; standing alone, it does not establish that she was, in fact, an innocent owner. But, as we have seen, Mrs. Allen was not required to establish her innocent owner defense prior to trial unless the government put her to her proof. That never happened.
 
 
 41
 The government did not suggest to the trial court that Mrs. Allen knew anything at all about the drug scheme. The government's appellate brief does advert to the hearsay testimony of Special Agent Keller that Judge Allen had told undercover agent McNeal that no one would be in the house except for himself, his wife, his son, and Titus Frederick,[1] and the appellate brief asserts that this "indicates that Mrs. Allen might be present during drug transactions." But no comparable suggestion was made to the trial court, and, as it apparently turned out, Mrs. Allen was not in fact present. We are not prepared to say that the papers filed by the governemnt in the trial court were sufficient to put Mrs. Allen to her proof, prior to trial, on the issue of what she actually knew or had consented to.
 
 
 42
 The government is not entitled to a summary judgment of forfeiture against Mrs. Allen merely because the issues that were raised by the government's motion for summary judgment were resolved against her. Those issues involved probable cause for instituting the forfeiture suit, not Mrs. Allen's innocent owner defense.
 
 
 43
 It remains to be seen, of course, whether Mrs. Allen will be able to establish that her husband was in fact acting without her knowledge or consent. She, not the government, will have the burden of proof on that issue, and if Mrs. Allen fails to establish that her husband acted without her knowledge or consent, the interests of both owners will be forfeited.[2] But if Mrs. Allen ultimately succeeds in establishing her lack of knowledge or consent, only Judge Allen's interest can be forfeited.
 
 
 44
 The judgment of the district court is AFFIRMED insofar as it relates to the real property interest of Judge Eugene Allen, and it is REVERSED insofar as it relates to the real property interest of Mrs. Bernice Allen. The case is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Hearsay testimony is admissible to establish probable cause. See United States v. One 1964 Beechcraft Baron Aircraft, etc., 691 F.2d 725 (5th Cir.1982), cert. denied, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983)
 
 
 [2]
 If Mrs. Allen knew that the jointly owned property was being used by her husband for illegal drug purposes, we take it that her interest would be subject to forfeiture whether or not she had specific knowledge of the particular acts described in this opinion