UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL PROPERTY, DESCRIBED AS LOT 4, BLOCK 5 OF the EATON ACRES, Excepting Therefrom that portion deeded to Multnomah County for road purposes, by deed recorded October 23, 1967, in Book 558, Page 130, in the City of Portland, County of Multnomah, and State of Oregon; commonly known as 6648 S.E. 45th Avenue, Portland, Oregon, Defendant.

Civ. No. 88–420–FR.

United States District Court,
D. Oregon.

May 16, 1989.

Charles H. Turner, U.S. Atty., and Craig J. Casey, Asst. U.S. Atty., Portland, Or., for plaintiff.

Lon N. Bryant, Wilsonville, Or., for claimant Joseph Apodaca.

## OPINION

FRYE, District Judge:

In the matter before the court, plaintiff, United States of America (the government), moves the court for summary judgment (# 22) in its favor forfeiting real property known as 6648 S.E. 45th Avenue, Portland, Oregon pursuant to 21 U.S.C. § 881(a)(7). Claimant Joseph Apodaca opposes the motion for summary judgment on the grounds that there are genuine issues of material fact relevant to the determination of whether the defendant property was used to facilitate the commission of a crime as alleged.

## FACTS SUBMITTED BY THE GOVERNMENT

On May 11, 1987, Special Agent Peter Constantine of the Drug Enforcement Administration (DEA) received information from a confidential reliable informant that Connie Caywood and Nicki Villebrun, who resided together in an apartment complex, were capable of obtaining ounce quantities of cocaine. The informant reported to Constantine that Caywood obtained the cocaine from Villebrun, who obtained it from an individual known as "Joe."

On May 12, 1987, the informant, under the direction of Constantine, met with Caywood for the purpose of purchasing one ounce of cocaine with monies provided by the government. Special agents of the DEA, assisted by other law enforcement personnel, established surveillance of Caywood after she left the meeting with the informant. Caywood met with a woman later identified as Villebrun. Both women traveled by car to a restaurant in the 4400 block of Woodstock Avenue, where Caywood exited the car. Villebrun then proceeded to the defendant residence in what appeared to the DEA agents to be a circuitous manner. She parked the car in front of the defendant residence. Villebrun was observed exiting the defendant residence and followed as she returned to the restaurant on Woodstock where she met Caywood. Both women then returned to Villebrun's vehicle and to the area of the original meeting with the informant.

Villebrun then left the area. Caywood met with the informant and returned the government funds to the informant along with a substance later found to be 0.13 grams of 92.3% pure cocaine. The informant later gave the cocaine to Constantine and told him that Caywood had identified the cocaine as a "free sample" obtained from Villebrun who had obtained it from

"Joe." Caywood explained to the informant that Joe did not have enough cocaine to fill the one ounce order, but was expecting a two kilogram shipment later that day.

On the night of May 12, 1987, the informant again provided Caywood with government funds to purchase one ounce of cocaine. Under surveillance, the DEA observed Caywood meet with Villebrun and travel with her to the defendant residence. Villebrun attempted unsuccessfully to enter the defendant residence. Caywood and Villebrun then left the defendant residence and went to a restaurant/bar for one-half hour and then returned to the defendant residence again. Both women then entered the residence. Approximately one-half hour later, the women departed, went back to their apartment for fifteen minutes, and then drove to meet the informant. Caywood then returned one-half of the government funds to the informant along with 13.9 grams of 71.3% cocaine. Caywood explained that the two ounce shipment had not yet arrived.

A check with Portland General Electric Company showed that the defendant residence received electric service subscribed in the name of Joseph Apodaca.

On June 2, 1987, the informant and an undercover DEA agent met with Caywood for the purpose of purchasing one ounce of cocaine. The informant and the undercover DEA agent drove Caywood to the vicinity of S.E. 44th and Carlton Streets. Caywood then walked to the defendant residence where she met with a white male later identified as Apodaca in front of the house. After several moments, both Caywood and Apodaca entered the defendant residence where they remained for one hour and twenty minutes.

After Caywood and Apodaca exited the defendant residence, Apodaca drove Caywood out of the area where she took a taxi to meet the informant and the undercover DEA agent. Caywood gave them 29.4 grams of 64.5% pure cocaine. Caywood was then told the identity of the undercover agents and was introduced to another DEA agent. Caywood signed a statement admitting her involvement in the most re-

cent transaction and identifying Apodaca as the source of her drug supply. Caywood stated that Apodaca had been expecting her because she had called ahead; that once inside Apodaca's residence, she and Apodaca went to the second floor; and that Apodaca went back downstairs and returned with the cocaine that she later gave to the informant and undercover agent.

On January 13, 1988, an indictment was returned by the grand jury against Apodaca charging him with two counts of distributing cocaine on May 12, 1987 and June 2, 1987. After entering a plea of not guilty, Apodaca pled guilty to the second count alleging distribution of cocaine on June 2, 1987. He subsequently was sentenced to three years in jail and a $10,000 fine, among other penalties.

## CONTENTIONS OF THE PARTIES

The government contends that the defendant property is subject to forfeiture because it was used to facilitate the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). The government relies upon section 881(a)(7), which provides that:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> ....
>
> (7) All real property, including any right, title, and interest ... in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Apodaca argues that any evidence presented that does not relate solely to the allegation of distribution of cocaine on June 2, 1987 cannot be considered by the court. Apodaca asserts that the transaction of June 2, 1987 occurred in his automobile

near Mike's Auto Parts, and that there has never been any cocaine in his home. He states that Villebrun is his girlfriend; that he did not provide the "free sample" or any other cocaine on May 12, 1987; that at some point prior to June 2, 1987, he became aware that Caywood wished him to obtain a quantity of cocaine for her; that he told Villebrun that Caywood could not come to his home for any purpose other than social; that he obtained the cocaine for Caywood and intended to deliver it to her residence; that before he could deliver it to her residence, he was approached by Caywood; and that after spending some time socializing, he drove Caywood to Mike's Auto Parts where he gave her the cocaine which had been in his car.

Apodaca states that the one ounce of cocaine delivered to Caywood was all that he possessed and was the largest quantity that he had ever possessed; that the cocaine had never been inside of his house; that a police search of his home found no illegal drugs; that he never brought illegal drugs into his home; and that a number of statements made by Caywood to the informant and undercover agent were exaggerations and fabrications made up to impress possible buyers. Apodaca's affidavit concludes:

> The allegations and insinuations that my home was in any way connected with illegal activity are false, incorrect and misleading. The fact that I, my girlfriend and other acquaintances of mine were seen at my home should not be grounds for taking my property from me. I have received substantial punishment as a result of my criminal activity and my plea of guilty thereto. In addition to a three-year prison sentence, I also received a $10,000 fine and the government now seeks to take my home all for having delivered on a single occasion less than one ounce of a controlled substance.

(Affidavit of Joseph Apodaca, p. 4, ¶ 15).

Apodaca argues that there is a genuine issue of material fact created by his affidavit as to whether the cocaine was delivered to Caywood in the defendant property.

Apodaca further argues that even if the court accepts the fact that he was in the house when he delivered the cocaine to Caywood, this does not indicate that the house was used to facilitate the delivery of cocaine. Apodaca argues that the government must show that the defendant property played a substantial role in the criminal act and that mere presence is not enough.

## ANALYSIS AND RULING

In order to prevail on its motion for summary judgment, the government must prove that there is probable cause to believe that the defendant property was used or intended to be used to facilitate the distribution of cocaine. "Probable cause" for forfeiture is generally defined as reasonable grounds for belief of guilt, supported by less than prima facie proof but more than a mere suspicion. *United States v. 1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1434 (9th Cir.1985). The government relies upon the facts stated above as well as the conviction of Apodaca for the distribution of cocaine on June 2, 1987.

Apodaca relies upon the case of *United States v. Certain Lots in Virginia Beach, Va.,* 657 F.Supp. 1062 (E.D.Va.1987), to support his position that the law requires that the government prove a "substantial connection" between the defendant property and the commission of the offense. In *Certain Lots in Virginia Beach,* the court noted the current split in the circuits as to the proper interpretation of the "facilitation" concept:

> Courts have not determined what constitutes facilitation under § 881(a)(7), the provision at issue in this case. However, courts have interpreted a similar provision of the civil forfeiture statute. 21 U.S.C. § 881(a)(4) provides that "aircraft, vehicles, or vessels, which are used ... in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]" may be subject to forfeiture. Many circuits have held that in order for property to be forfeited under this section, there must be a "substantial connection" between

the property and the underlying criminal activity. *See United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026, 1029 (1st Cir.1980). *See also United States v. One 1976 Ford F–150 Pick–Up VIN Fl4YUB03797*, 769 F.2d 525, 527 (8th Cir. 1985) ("substantial association" necessary); *United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1426 (11th Cir.1983). Other circuits have explicitly rejected any requirement of a substantial connection, holding instead that use of property "in any manner" in connection with an illegal drug transaction is sufficient to justify forfeiture. *See United States v. 1964 Beechcraft Baron Aircraft*, 691 F.2d 725 (5th Cir. 1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421, 423 (2d Cir.1977). 657 F.Supp. at 1064. The Ninth Circuit has not addressed this issue.

The government is only required to prove by less than prima facie proof but more than a mere suspicion that Apodaca delivered cocaine to Caywood in the defendant property. Caywood's statement that Apodaca went downstairs and then returned with the cocaine, along with the substantial circumstantial evidence that Caywood and Villebrun went to his residence for the purpose of purchasing cocaine and thereafter delivered cocaine, and the police reports that show that Caywood went to the defendant property, stayed there for over an hour, and thereafter delivered cocaine, is more than adequate proof to meet the government's burden to establish the presence of probable cause.

Once this initial showing has been made, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture or that a defense to forfeiture is applicable. *See United States v. Premises Known as 3639–2nd St., N.E., Minneapolis, Minn.*, 869 F.2d 1093 (8th Cir.1989). The claimant's statement that the delivery of the cocaine took place at Mike's Auto Parts and not at his residence is not adequate to carry that burden and to avoid forfeiture. Forfeiture laws are intended to be harsh on those distributing drugs.

The government's motion for summary judgment (# 22) is granted. The government shall prepare the appropriate judgment.