**UNITED STATES of America, Plaintiff,**

v.

**ONE SINGLE FAMILY RESIDENCE LOCATED at 15526 69th DRIVE N., LAKE PARK, FLORIDA, Defendant.**

No. 89–8086–CIV.

United States District Court,
S.D. Florida.

Nov. 27, 1991.

Sam Flanagan, Asst. U.S. Atty., Fort Lauderdale, Fla., for plaintiff.

John Tierney, West Palm Beach, Fla., for defendant.

ROETTGER, Chief Judge.

THIS MATTER comes on before the court on a motion for a new trial in the civil forfeiture case of claimant's home under 21 U.S.C. § 881(a)(7). The issue was whether the claimant/owner qualified under the "Innocent Owner" exception of sub-section 7.

## FACTS OF THE CASE

The case is reasonably unique for a number of reasons. The government's evidence accused Claimant's husband of being part of the "beach crew" of a cocaine smuggling operation. The modus operandi of the smuggling operation was to bring cocaine from the Bahamas in boats to approximately five miles off-shore. From there they transported the cocaine to secluded beach areas in northern Palm Beach County by carrying it on jet skis. The beach crew received the individual containers of cocaine from the jet skis and the claimant's husband then transported the cocaine by canoe through the mangrove

areas to the Intracoastal Waterway where he could offload it from his canoe into vehicles waiting at appropriate bridges, according to testimony of witnesses who participated in the smuggling operation.

The uniqueness continues in that claimant wife, Judy Mulford, owned the house free and clear. The government admits the proceeds did not come from illegal narcotics activity; to the contrary, claimant/wife was severely injured in an auto accident and purchased the property from part of her settlement proceeds from that accident. She bought two acres of land northwest of West Palm Beach and had a house constructed on it where she lived with her husband and twin sons.

The final unique evidence was that the government has never charged or indicted Judy Mulford's husband for any of his alleged cocaine transactions.

Testimony revealed that she was active in her church and opposed to use of drugs. She had divorced her husband 3 months before the trial and testified unequivocally, with corroboration, that she detested the government's two witnesses because of the effect of their association on her husband and because these associates kept him away from home so much during the evenings and into the night. She even sicked her dogs on one of them at one point.

The government's witnesses, Parker and Pinder, corroborated that she did not like them and she had frequently asked them to leave her house. However, the witnesses, who were both convicted for their narcotic activities both in the Southern District of Florida and the District of Montana, testified she well knew of the smuggling and helped out. After their arrest, these witnesses decided to cooperate to the fullest with the government and as a result of their revelations and testimony, more than 160 pieces of real estate have been seized by the government.[1]

The witnesses testified that they used the home of Judy Mulford not to stash

---

**1.** Pinder was also the government's star witness in *U.S. v. One Single Family Residence,* 933 F.2d 976 (11th Cir.1991).

drugs, but to stash cash. They testified that she had a safe and periodically they would retrieve cash from the safe and gave her a "couple hundred dollars" each time they did so. Ms. Mulford testified that she and her husband (who was a carpenter earning $18,000. a year and she was a seamstress so she could work at home) had purchased a safe while they were living at her home. The safe was not a big safe but large enough to be on four wheels. She claimed they kept their valuables there and that their twin boys kept their baseball card collection in the safe. Although the twins were under orders not to open the safe except when their mother was home, one testified he would do so when she was not there so he could look at his baseball card collection. He testified, further, that he'd never seen any drugs in the safe.

Additionally, Parker testified that he set forth a design for canvas bags to fit over the handlebars of jet skis, in which Parker intended to carry kilos of cocaine. Although he did not testify that he told Judy Mulford what the zippered pouches were for, he asserted she knew what they were for and made the pouches.

The trial presented a classic jury question, but the difficulty lay in which body of law to follow in instructing the jury on the question of her claim of being an "innocent owner".

### DIVERGENT SOURCES OF APPLICABLE LAW

Unfortunately, nearly all the cases on the subject deal with summary judgment proceedings rather than instructions to the jury.[2] One line of cases is perhaps best demonstrated by the Sixth Circuit decision of *U.S. v. Lots 12, 13, 14 and 15, Keeton Heights Subdivision, Morgan County, Kentucky,* 869 F.2d 942 (6th Cir.1989) (A colorful fact situation where a Kentucky judge was accused of illegal narcotic transactions of which his wife was unaware).

The Sixth Circuit's holding as to what it takes to establish an "innocent owner" is simply that the claimant establish by preponderance of the evidence that the "proscribed act was committed 'without the knowledge or consent of that owner.'"

Contrasted with this holding is the Second Circuit in its decision of *U.S. v. 141st Street Corporation by Hersh,* 911 F.2d 870 (2d Cir.1990). The Second Circuit defined "consent" in Section 881(a)(7) as the failure by an owner to take all reasonable steps to prevent illicit use of the premises once he acquires knowledge of that use. This was viewed as the appropriate balance between the two congressional purposes of making drug trafficking prohibitively expensive for the property owner and preserving the property of an innocent owner. *Id.* The Second Circuit adhered to the "Hersh" case in a very recent decision. *United States of America v. Certain Real Property and Premises known as 418 57th Street, Brooklyn, New York,* 922 F.2d 129 (2nd Cir.1990). Unfortunately, despite this conflict between the Circuits, the Supreme Court denied certiorari. *141st Street Corporation by Hersh v. U.S.,* — U.S. —, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

There are several cases dealing with forfeitures of monies under sub-section (a)(6) which also has an innocent owner exception in language identical to that of (a)(7). Although the Eleventh Circuit has addressed the question under (a)(6), it has not done so under (a)(7). In *U.S. Four Million, Two Hundred Fifty–Five Thousand,* 762 F.2d 895 (11th Cir.1985), the court observed:

The government argues that we should replace the "actual knowledge" standard with the "negligence" standard discussed by the Supreme Court in *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In *Calero–Toledo,* the Court addressed a due process challenge to a forfeiture,

**2.** *United States v. One Urban Lot Located at 1 Street A–1, Valparaiso, Bayamon, Puerto Rico,* 865 F.2d 427 (1st Cir.1989); *United States v. Lots 12, 13, 14 and 15, Keeton Heights Subdivision, Morgan County, Kentucky,* 869 F.2d 942 (6th Cir.1989);

*United States v. 4657 Acres in Martin County, Florida,* 730 F.Supp. 423 (S.D.Fla.1989); *United States of America v. Certain Real Property,* 724 F.Supp. 908 (S.D.Fla.1989).

under a Puerto Rico statute, of property belonging to an alleged "innocent owner." The Court upheld the forfeiture, but stated in dicta that "[i]t ... has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent.... Similarly, the same might be said of an owner who proved *not* only that he *was* uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property...." Id. at 689, 94 S.Ct. at 2094–95 (emphasis added).

Because *Calero–Toledo* did not involve the statutory "innocent owner" defense contained in 21 U.S.C. § 881(a)(6), we question the government's invocation of the *Calero–Toledo* dicta in this case. Nevertheless, because we find that Ghitis failed to meet the "actual Knowledge" standard, we leave *for another day* the question of the applicability of the *Calero–Toledo* dicta to forfeiture actions under 21 U.S.C. § 881(a)(6). See *United States v. $47,875 in United States Currency,* 746 F.2d 291, 292 n. 1 (5th Cir. 1984.)

That was the state of the law when this case was tried; this court predicted that when the Supreme Court finally and inevitably resolves the conflict between the Cir-

cuits, that it will determine the intention of the Congress to be more like the Second Circuit's approach. However, this court fashioned an instruction to the jury in an effort to let the jury have some latitude to apply the law given it by the court to this unusual evidence.

Since the trial the Eleventh Circuit has spoken clearly on the innocent owner "exception" in 21 U.S.C. § 881(a)(6)—despite the fact the case involved the forfeiture of real property—in *U.S. v. One Single Family Residence at 15603 85th Avenue, No., Lake Park, Fla.,* 933 F.2d 976 (11th Cir. 1991). However, the language of the "innocent owner" exception is identical in subsections (a)(6) and (a)(7).

In the latter case, the Eleventh Circuit specifically held as follows:

"... that the 'reasonably possible' language of Calero–Toledo applies to section 881(a)(6) proceedings." *Id.* at 982.

The Court of Appeals further cites approvingly the Second Circuit's holding of *U.S. v. 141st Street Corp. by Hersh,* supra.

This court's jury instruction on claimant's burden to prove her claimed status as an "innocent owner" incorporated principles of *Calero–Toledo's* "reasonably possible" language and that of *Hersh,* to a degree.[3]

The jury had a question about the charge which indicated the jury had answered the

---

**3.** Even if the claimant did not know that the property was being used for illegal drug transactions or to facilitate (assist) illegal drug transactions, the claimant cannot be an innocent owner for the purposes of the statute if the claimant deliberately closed her eyes to what she had every reason to know was the truth from the facts.

If you find the Claimant, Judy Mulford, has proven by a preponderance of the evidence that she did not have actual knowledge that her property was being utilized to facilitate cocaine transactions then you must find in favor of claimant.

If you find that the claimant had knowledge that her property was being used to facilitate cocaine transactions, then you must determine if her house was being used to facilitate drug transactions without her consent. Mere subjective withholding of consent is not sufficient to support a claim of being an innocent owner: the claimant must prove by a preponderance of

the evidence that the property was used to facilitate drug transactions without her consent.

Because you cannot look into the mind of anyone, you must determine "without her consent" by the conduct of claimant. In your determination, you may consider any efforts of claimant to stop the drug transactions, if any, in the house, and the reasonableness, effectiveness or persistence of any such efforts.

If you find that claimant, Judy Mulford, had proven by a preponderance of the evidence that she did not consent, as contained in these instructions, to the use of her property to assist drug transactions, then you must find in favor of claimant.

But, if you find that Claimant, Judy Mulford, has not proven by a preponderance of the evidence that she did not have actual knowledge that her property was being utilized to facilitate cocaine transactions or did not consent then you must find in favor of plaintiff.

first two questions presented in the charge (i.e., whether the United States had shown a substantial connection between the property and drug transactions and her knowledge of them) in favor of the government bringing them to the more difficult question of whether such cocaine transactions were done without her consent. The specific jury question was: "We are addressing Question # 3. We have reservations concerning our opinion that Judy Mulford may have given her consent during the early stages of this situation, however, she may have withheld her consent later in the situation. Does her early consent supercede (sic) her lack of consent later?"

The following morning, the court answered the jury's question utilizing two basic principles of forfeiture law.[4] The first sentence is based on a long line of forfeiture cases, e.g., *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1899) on through the present. See *U.S. v. Bissell*, 866 F.2d 1343 at 1349 (11th Cir.1989). It seems to be as ancient in America as forfeiture itself.

Approximately two hours later the jury came back with a verdict for the government on all three interrogatories submitted to it.

█ This forfeiture presents a classic harsh result, particularly because the jury's question indicates they felt that any consent by her early in the drug transactions was subsequently withdrawn by her. To forfeit the home of a wife, who was undoubtedly trying to save her marriage, when she subsequently withdrew her consent from the activity seems unduly harsh. Rehabilitation is an accepted premise in much of the law and to ignore it in the law of forfeiture seems particularly inappropri-

ate. Nevertheless, the court finds this is the state of the law now.

The matter was thoroughly considered by the jury and the court feels the jury was properly instructed. In fact, claimant may have received more favorable instructions than the present Eleventh Circuit law would warrant and can hardly complain. Consequently, this court is constrained under existing law to deny the motion for a new trial on the question of jury instructions.

### DENIAL OF SURREBUTTAL TO CLAIMANT

█ 21 U.S.C. § 881 is silent as to a claimant's right to surrebuttal. Ordinarily, surrebuttal would not be appropriate. However, where a claimant asserts an innocent owner defense under (a)(7), claimant has the burden—once the government has established a substantial connection between the drug transaction and the property—to prove a lack of knowledge or a lack of consent to the property's use in a drug transaction.

Claimant contended that she should have the right to surrebuttal inasmuch as she had that burden. The court did not afford her that opportunity to present evidence after the government's rebuttal. Claimant asserts such denial of surrebuttal denied her due process by preventing her from receiving a fair trial.

Reluctantly,[5] this court must agree. Permitting surrebuttal is a matter within this court's discretion. In retrospect, it seems only fair that a claimant owner ought to have the right to present surrebuttal to the government's extensive rebuttal.

This is particularly true where, as in this forfeiture case, the government followed

---

4. "Jury, your question cannot be answered by this court with a yes or no. However, you are instructed that forfeiture to the government takes effect immediately upon commission of the illegal narcotics act which has a substantial connection to the real property. But you are further instructed that forfeitures are not favored in the law.

You are instructed to continue your deliberations using these further instructions as well as

the instructions the court gave you earlier in applying them to the evidence in the case."

5. An informal and unscientific poll of several other U.S. District Court judges reveals they have granted about one motion for new trial every five years or so. The undersigned has granted a motion for new trial only once before—in nineteen-plus years.

**1220**

approved procedure (See *United States v. 1964 Beechcraft Baron Aircraft, etc.*, 691 F.2d 725 (5th Cir.1982); *United States v. One 1974 Porsche*, 682 F.2d 283 (1st Cir. 1982)) and used hearsay testimony in its case in chief. Claimant put on her defense and then Plaintiff Government rebutted her evidence extensively. Claimant would have had some surrebuttal evidence and, considering the jury's apparent close decision—see text following fn. 3, supra—it may well have been determinative. Additionally, the government was less than forthcoming in its discovery production, which seemed to hamper claimant.

The motion for new trial is GRANTED.

DONE AND ORDERED.