952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
CERTAIN REAL PROPERTY LOCATED AT 6099 QUAKER HILL WEST
BLOOMFIELD, MICHIGAN, et al., Defendants-Appellees,
Frank Marinelli, doing business as Brown-Bilt Construction Co.,
Marathon Mortgage Corporation, Claimants-Appellees,
Basima Kalasho, Claimant-Appellant/Cross-Appellee,
Vanessa Akrawi, Claimant.
 
 Nos. 90-2147, 90-2257.
 United States Court of Appeals, Sixth Circuit.
 Dec. 13, 1991.
 On Appeal from The United States District Court for the Eastern District of Michigan, 89-71324, ZATKOFF, J.
 E.D.Mich.
 AFFIRMED.
 Before: KEITH, DAVID A. NELSON and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant-Appellant Basima Kalasho ("claimant"), as owner of the defendant property, appeals: (1) the district court's order of forfeiture of the property known as 6099 Quaker Hill, West Bloomfield, Michigan ("Quaker Hill"), a 1987 Volvo and a 1988 Acura ("automobiles"), and miscellaneous jewelry (70% of amount seized) (collectively referred to as "defendant property"); (2) the jury's finding that claimant failed to rebut Plaintiff-Appellee's ("government") probable cause showing; and (3) the district court's denial of claimant's motion for a new trial, for relief from judgment or judgment notwithstanding the verdict. The government cross-appeals the trial court's denial of probable cause to forfeit the property known as 1224, 1226, 1228 and 1230 East Lincoln, Madison Heights, Michigan ("East Lincoln").
 
 
 2
 The district court concluded that probable cause existed as to the defendant property (excluding East Lincoln), holding that it had been obtained, at least in part, with proceeds from the sale or distribution of controlled substances and/or was used to commit or facilitate the commission of a federal drug law violation. As to East Lincoln, the district court found the government failed to present evidence establishing probable cause for forfeiture. For the reasons set forth below, we affirm.
 
 FACTS
 
 3
 In 1988, federal agents ("agents") uncovered a large cocaine conspiracy run by the Kalasho Organization ("Organization") made up, in part, of claimant's family members. During the investigation, agents videotaped drug deliveries and exchanges and taped conversations of illegal drug transactions involving the defendant property. Salwan Asker ("Asker"), a former Organization member, provided information as to the members and functions of the conspiracy, identifying claimant as an active Organization member. This information was corroborated by the agents and a second informant. In addition, several automobiles owned by claimant were seen at various drug exchanges. A search warrant was executed at Quaker Hill, where agents recovered numerous weapons, cashier's checks made out to claimant, and drug records. The agents also recovered 718 items of gold and jewelry from safe deposit boxes.
 
 I.
 
 4
 The question of whether probable cause to forfeit was established is subject to de novo review on appeal. United States v. $38,600, 784 F.2d 694, 697 (5th Cir.1986). Probable cause is shown when a "substantial connection exists between the property to be forfeited and the illegal exchange of a controlled substance." United States v. 526 Liscum Dr., 866 F.2d 213, 216 (6th Cir.1988). A totality of the circumstances test is used to determine if a reasonable law enforcement officer would believe the property was related to criminal activity. Illinois v. Gates, 462 U.S. 213, 231-32 (1984). Probable cause may be based on inadmissible, but otherwise reliable evidence. United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 639 (1st Cir.1988). However, witness credibility is a question for the trier of fact, while witness competency is an issue for the court. See United States v. Moreno, 899 F.2d 465, 469 (6th Cir.1990); United States v. Ramirez, 871 F.2d 582, 584 (6th Cir.1989) (Trial judge's decision to admit or exclude testimony reversed only for clear abuse of discretion.).
 
 EAST LINCOLN
 
 5
 The government relied solely on Asker's testimony to establish probable cause for the East Lincoln forfeiture and offered no independent corroboration. The district court found Asker's testimony to be incredible, unreliable and self-serving. It relied, in part, on the following factors: (1) a prior drug conviction; (2) an admission to continued drug dealing; (3) a long standing drug addiction; and (4) participation in a Methadone maintenance program at the time of the trial.[1] Based on its evaluation of Asker's credibility, the district court found the government failed to present sufficient and reliable evidence to link East Lincoln to the drug conspiracy. If Asker was not credible in that testimony, then the district court properly found that the government had not established probable cause to believe East Lincoln was purchased with proceeds derived from illegal drug transactions or was used or intended to be used to facilitate the commission of any drug law violation.
 
 OTHER PROPERTY
 
 6
 In a civil forfeiture action, once the government establishes probable cause to believe the property is proceeds of or used to facilitate the exchange of illegal substances, the claimant has the burden of proving by a preponderance of the evidence that the property should not be forfeited. United States v. One 1984 Cadillac, 888 F.2d 1133, 1135 (6th Cir.1989); see United States v. $83,320 in United States Currency, 682 F.2d 573, 577 (6th Cir.1982) (quoting United States v. $22,287.00 in United States Currency, 520 F.Supp. 675, 678 (E.D.Mich.1981)) (Probable cause standard is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion."). At both the probable cause hearing and the jury trial, substantial circumstantial evidence was offered linking claimant and the other defendant property to the drug conspiracy.
 
 
 7
 Proceeds are traceable to an exchange of drugs and money and are derived only from completed transactions. 21 U.S.C. § 881(a)(6). According to the government's source and application analysis for the years 1981 through 1988, claimant had only $136,553.97 in disposable income.[2] During this time period, however, claimant's expenditures far exceeded this amount and included: (1) several automobiles, including the 1987 Volvo (downpayment, no trade-in) and the 1988 Acura (paid in full by cash, no trade-in); (2) automobile insurance premiums ($8000.00 yearly); (3) the Moffett Market ($45,000.00); (4) Quaker Hill ($235,000.00 with $135,000.00 downpayment); and (5) jewelry ($300,000.00). Moreover, claimant completed payments for East Lincoln and paid $40,000.00 in attorney fees.
 
 
 8
 In addition to the proceeds theory, the government also relied on a facilitation theory to support forfeiture of the defendant properties. Under Sections 881(a)(4) (automobiles) and (a)(7) (real property), the defendant property is subject to forfeiture if it is used "in any manner" or "in any part" in facilitation of a drug violation. United States v. Lots 12, 13, 14, and 15, Keeton Heights, 869 F.2d 942, 946 (6th Cir.1989); see also One 1984 Cadillac, 888 F.2d at 1136. The only exceptions is if the owner can prove that he or she was uninvolved in and unaware of the illegal activity. Lots 12, 13, 14, and 15, Keeton Heights, 869 F.2d at 947. Independent of Asker's testimony, the government presented substantial evidence to link the defendant property to the drug conspiracy, including: (1) a variety of weapons found at Quaker Hill; (2) recorded drug conversations from Quaker Hill; (3) $95,000.00 in cashier's checks made out to claimant and drug records found at Quaker Hill; and (4) multiple observations of claimant's automobiles at drug meetings.[3] On appeal, the evidence is to be viewed in the light most favorable to the prevailing party. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The government's evidence clearly supports the jury verdict and rebuts any claim of innocent ownership or use of legitimate funds. Accordingly, probable cause to forfeit the defendant property on a proceeds or facilitation theory existed.
 
 II.
 
 9
 Claimant moved this court for an evidentiary hearing to present evidence contesting Asker's credibility and reliability. Claimant's proper redress was a motion for an evidentiary hearing filed with the district court. As claimant did not move the district court for a hearing, this court denies her motion. Boone Coal and Timber Co. v. Poplan, 787 F.2d 1056, 1064 (6th Cir.1986).
 
 III.
 
 10
 At the district court level, claimant moved for a new trial based on newly discovered evidence regarding Asker's credibility. Claimant, however, did not present any new evidence or affidavits pertaining to Asker's alleged false testimony and based her motion solely on newspaper accounts of Asker's false grand jury testimony in a separate proceeding. The district court properly denied claimant's motion.
 
 
 11
 In addition, claimant now alleges that she is entitled to a new trial because of improper conduct by the government's witnesses and counsel. As the claimant neither raised the misconduct issue at trial, nor made any objections to it during trial, this issue will not be considered on appeal. Boone Coal and Timber Co., 787 F.2d at 1064. Even if claimant had properly preserved this issue for appeal, she failed to show a reasonable probability that the jury verdict was influenced by the government's conduct. City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir.1980).
 
 
 12
 For the aforementioned reasons, we AFFIRM the district court's decision in whole.
 
 
 
 [1]
 In making its determination as to Asker's credibility, the district court carefully considered the witness' intelligence, motive, state of mind, demeanor, ability to observe the facts testified to and whether the witness was capable of accurate recollection of the facts
 
 
 [2]
 The analysis looks at "sources," the amount of money available, and subtracts "applications," the amount of money spent to determine remaining funds
 
 
 [3]
 Although the government relied on the proceeds theory as to the Acura, facilitation is implicated in that claimant's son was shot, in a suspected drug-related killing, while entering the Acura