**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**ONE PARCEL OF REAL ESTATE COMMONLY KNOWN AS 916 DOUGLAS AVENUE, ELGIN, ILLINOIS, Defendant.**

**Appeal of Paul F. BORN, III,
Claimant–Appellant.**

**No. 88–3361.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1989.[1]

Decided May 29, 1990.

Rehearing Denied July 16, 1990.

---

**1.** This opinion was circulated among all judges of the court in regular active service pursuant to Circuit Rule 40(f) because of an apparent conflict with *United States v. Santoro,* 866 F.2d 1538 (4th Cir.1989), and *United States v. Premises Known as 3639–2nd Street, N.E.,* 869 F.2d 1093 (8th Cir.1989). A majority of the judges did not favor a rehearing en banc.

Thomas P. Walsh, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Robert J. Raab, Barnett & Raab, Chicago, Ill., for claimant-appellant.

Before BAUER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

BAUER, Chief Judge.

This is an appeal from a judgment of forfeiture in favor of the United States against Paul F. Born, III. The district court found that Born had used his one-third interest in property at 916 Douglas Avenue, Elgin, Illinois, to facilitate the felony distribution of cocaine, and ordered the forfeiture of that property pursuant to 21 U.S.C. § 881(a)(7). Born claims that because no substantial connection existed between the cocaine and his property the order of forfeiture was improper. We disagree with Born's suggested construction of the statute and affirm.

I.

Paul F. Born, III was apparently no stranger to drug transactions. On February 20, 1986, he met with John Mueller, an undercover investigator for the Cook County States Attorney's Office at the Corfu Restaurant in Hanover Park, Illinois. Born had already served time in prison for narcotics trafficking and had also been convicted for weapons offenses. Mueller offered to sell Born a kilogram of cocaine, but Born declined because he was in the process of selling a kilogram he had just purchased. Born gave Mueller his home phone number and the two agreed to keep in touch.

On April 15, 1986, Mueller called Born at home and explained that he was out of cocaine and needed two ounces. Born stated that the quantity was not a problem and agreed to sell Mueller the cocaine for $1600 an ounce.[2] Born concluded the conversation by instructing Mueller to call him at home the next day to arrange a time and place for the deal.

The next morning, Mueller again called Born's home, but the phone was answered by Don Mazzanti. Mazzanti explained that Born was asleep and could not come to the phone. When Mueller said that he was calling about the purchase of two ounces of cocaine, Mazzanti told him to try again later when Born was awake. Later that day, however, Mazzanti called Mueller and arranged to deliver the cocaine that evening at the Players' Lounge in Streamwood, Illinois.

That night the deal took place as arranged. Outside the lounge, Mazzanti got into Mueller's vehicle. Mueller gave Mazzanti $3200 in exchange for the cocaine. Mazzanti explained to Mueller that, should ever need more cocaine he should call Born again. This initial delivery was, according to Mazzanti, Born's way of feeling out Mueller to make sure he was legitimate.

In October, 1986, the United States filed a complaint seeking the forfeiture of Born's house in Elgin, Illinois under 21

---

**2.** In his brief, Born claims that he told Mueller that he could not help him and never discussed the price or delivery of the cocaine. The district court found Mueller's testimony the more credible, though, and we will not lightly overturn such findings.

U.S.C. § 881(a)(7). Prior to this action, Born was convicted of conspiracy to possess five kilograms of cocaine with intent to deliver and given a 23-year sentence. *United States v. Born*, No. 87 CR 518 (N.D.Ill.) The government brought this forfeiture action to seize the real estate from which Born was running his cocaine operation.

Following a bench trial, the district court held that Born's house was used to facilitate his drug business and ordered forfeiture of Born's one-third interest in the real estate.[3] Born subsequently filed a timely notice of appeal and the district court entered a stay pending this court's determination.

## II.

Our threshold issue for determination on this appeal is whether a "substantial connection" must be demonstrated between the property and the underlying drug offense in order to justify forfeiture under 21 U.S.C. § 881(a)(7). Born contends that such a requirement is necessary to harmonize the forfeiture statute with Congressional intent. The government, of course, argues for a stricter reading of the statute.

■■■ The Controlled Substances Act of 1970, 21 U.S.C. §§ 801–970, included a civil forfeiture provision which called for the forfeiture of several forms of property used to transport "or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" illegal drugs. 21 U.S.C. § 881(a)(4). This section provided for the forfeiture of automobiles, trucks, aircraft, drug containers, raw materials used in the manufacturing process and the illegal drugs themselves, among other property. Significantly absent were provisions calling for the forfeiture of money or things of value exchanged for illegal drugs and real estate used to facilitate the commission of a drug felony. In 1978, Congress added § 881(a)(6) providing for the forfeiture of money and the proceeds of illegal drug dealing.[4] Six years later, Congress closed another loophole by passing an amendment which added § 881(a)(7), the provision at issue here, which extended forfeiture to real estate. This provision states, in part:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> (7) All real property ... which is used, or intended to be used, *in any manner or part*, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment....

(Emphasis added). As with any question of statutory interpretation, our "starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). *See also Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). This court has stated that we will look beyond the express language of a statute only where that statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme. *See United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir.1978).

Here, the language of the statute is clear, straightforward and unambiguous. Forfeiture is appropriate if the property is "used, or intended to be used, in any manner or part, to commit or to facilitate the

---

**3.** The remaining two-thirds interest in the real estate is held by Born's parents, Mr. and Mrs. Paul F. Born, Jr. The order entered by Judge Kocoras provides that the U.S. Marshall may, in his discretion, offer to sell the premises for a reasonable price to Mr. and Mrs. Born. If not, the parents are entitled to two-thirds of the proceeds, after the deduction of any expenses, of any sale.

**4.** Section 881(a)(6) provides for forfeiture of moneys, negotiable instruments, and/or securities "used or intended to be used to facilitate any violation of this subchapter." Significantly, the language "in any manner or part" used in both § 881(a)(4) and § 881(a)(7) is absent. This has led to a narrower reading of this section. *See United States v. Beechcraft Baron Aircraft*, 691 F.2d 725 (5th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).

commission of" a drug offense. Congress intended to reach all real property used to promote the drug trade. It is a broad, sweeping amendment which grants wide powers to the executive branch for the limited purpose of combating the flow of illegal drugs. Grafting an implied "substantial connection" test on to the plain language of this statute would not avoid ambiguity or the frustration of the Congressional scheme, but promote them. We see no reason to read the penalties of this statute more narrowly than the plain language demands.

■ Indeed, Born does not contend that the addition of this "substantial connection" test is necessary to avoid an absurd result or frustration of the statutory scheme. Instead, Born relies on a section of the Senate Report to the 1984 amendment adding § 881(a)(7) to bolster his argument. The Supreme Court has stated that when statutory language is unambiguous, it is presumed to express the legislative purpose and resort to the legislative history is not necessary. *See American Tobacco Company v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). Nevertheless, despite the clear wording of § 881(a)(7), Born points to a section of the Senate Report which address the problems to be corrected by the new amendment. This particular discussion states:

> Under current law, if a person uses a boat or car to transport narcotics or uses equipment to manufacture dangerous drugs, his use of the property renders it subject to civil forfeiture. But if he uses a secluded barn to store tons of marijuana or uses his house as a manufacturing laboratory for amphetamines, there is no provision to subject his real property to civil forfeiture, *even though its use was indispensable to the commission of a major drug offense* and the prospect of the forfeiture of the property would have been a powerful deterrent.

S.Rep. No. 225, 98th Cong., 1st Sess. 195, reprinted in 1984 U.S.Code Cong. & Ad. News 3182, 3378 (emphasis added in Appellant's brief). Born reads this section to imply that Congress did not intend the for-

feiture statute to apply to property with only an incidental or fortuitous connection to the drug business, but only to real estate which is "substantially connected" to illegal activity. While we agree that the property must have more than an incidental or fortuitous connection to criminal activity, we decline to read the statute more leniently than this.

The Senate Report cites some of the more egregious examples created by the loophole in the forfeiture statute. By omitting real estate from § 881(a), Congress had inadvertently left a wide range of property used to facilitate commerce in illegal drugs outside of its reach. The legislation itself, however, no more demands that the property be "substantially connected" to the underlying offense than it requires that the property be "indispensable" to the crime. Yet, "indispensable" is precisely the word used in portions of the Senate Report relied upon by Born. Even Born concedes that an "indispensability" requirement would be a misreading of the statute.

Born's selective use of the legislative history as our controlling guide to the statute could also lead to other absurd results. A literal interpretation of this passage in the Senate Report could also limit forfeiture only upon the discovery of "tons of marijuana" rather than merely several kilograms, or demand that homes be used as "manufacturing laboratories for amphetamines" instead of simple storage areas for the drugs. We would not tolerate such a reading of the plain language in a statute, nor will we give such an absurd reading to a legislative history.

■ We must note, however, that Born's position is not without some support from other jurisdictions. The Fourth Circuit has held that a "substantial connection" is required for forfeiture under § 881(a)(7). *See United States v. Schifferli,* 895 F.2d 987 (4th Cir.1990); *United States v. Santoro,* 866 F.2d 1538 (4th Cir.1989). In *Schifferli,* the court affirmed the forfeiture of a dentist's office for illegal distribution of prescription drugs because a "substantial connection" existed between the office and

the offense. The court stated, however, that

> [It is] irrelevant whether the property's role in the crime is integral, essential or indispensable. The term "facilitate" implies that the property need only make the prohibited conduct "less difficult or 'more or less free from hinderance.'" Just one use of the property may be enough, given that a single violation is sufficient under § 881(a)(7).

*Id.* at 990 (citations omitted). Thus, although the Fourth Circuit has adopted a "substantial connection" test, the differences between this approach and our own appear largely to be semantic rather than practical.

The Eighth Circuit has also employed a "substantial connection" test. *United States v. Premises Known as 3639–2nd Street, N.E.,* 869 F.2d 1093 (8th Cir.1989). In *3639–2nd Street,* the Eight Circuit reversed a district court ruling denying forfeiture and held that a substantial connection did indeed exist between the sale of cocaine and the defendant's house. The court expressly overruled the district court's requirement of a continuing drug business or ongoing operation. *Id.* at 1096. Instead, holding that "we believe that if persons 'make real property available as a situs for an illegal drug transaction, it is forfeitable.'" *Id.* (quoting *United States v. 26.075 Acres,* 687 F.Supp. 1005, 1014 (E.D.N.C.1988)). Circuit Judge Arnold added, in a concurring opinion, that the court did not "depart from its past insistence that there must be a substantial connection between the property being forfeited and a drug related crime." 869 F.2d at 1098.

Given these cases, the distinction between a "substantial connection" test and the "in any manner, or part" language offered directly in the statute is blurry at best. We believe the more principled and direct approach, and the one demanded by the plain wording of the statute itself, is to affirm forfeiture of any real estate that is used *in any manner or part* to commit or facilitate the commission of a drug related offense.[5]

■■ Applying our standard to the case at hand, our inquiry is limited to whether the connection between the underlying drug transaction and Born's property was more than incidental or fortuitous. The facts before us make this a rather simple proposition. Born had met with agent Mueller and was familiar with his interest in the sale or purchase of cocaine. When Mueller called Born at his home telephone number on April 15, 1986, Born negotiated the price and quantity of cocaine to be sold the next day. When Mueller called Born's number again on April 16, he was able to arrange the entire transaction with Mazzanti, who stated over the phone that he was acting for Born. Later that evening, when the transaction between Mueller and Mazzanti was completed, Mazzanti stated that he was "feeling out" Mueller as to the possibility of additional transactions between Born and Mueller. Given this history, we are satisfied that the district court properly found that the nexus between Born's house and the drug offense was not incidental or fortuitous.

### III.

A "substantial connection" is not required between the property and the related drug offense for forfeiture of real estate under 21 U.S.C. § 881(a)(7). Instead, the government must only demonstrate that the nexus is more than incidental or fortuitous. The district court properly found that a sufficient nexus existed between Born's house and the illegal drug transaction to justify forfeiture under 21 U.S.C. § 881(a)(7). The loss of one's home for the sale of a small amount of cocaine is undoubtedly a harsh penalty. But Con-

---

5. Several circuits have declined to require a "substantial connection" test for forfeiture under § 881(a)(4), the provision from which the language in § 881(a)(7) is drawn. *See United States v. 1964 Beechcraft Baron Aircraft,* 691 F.2d 725 (5th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *Unit-* ed States v. One 1974 Cadillac Eldorado Sedan, 548 F.2d 421, 423 (2nd Cir.1977). One circuit has even refused to impose a "substantial connection" test under the stricter language of § 881(a)(6). *See United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357 (9th Cir.1986).

gress has intended this harsh punishment for those who sell illegal drugs. *Dura lex, sed lex.* The forfeiture of Born's one-third interest in the property at 916 Douglas Road, Elgin, Illinois is, therefore,

AFFIRMED.

FLAUM, Circuit Judge, concurring.

I concur in the judgment of the Court that Born's property was used "in any manner or part to commit or to facilitate" a drug transaction. I write separately to express my view that while the dictates of 21 U.S.C. § 881(a)(7) were minimally satisfied under the facts of this case, there might be situations where the application of the broadly-written provision would raise eighth amendment concerns. Although the "substantial connection" test advanced by the claimant invites courts to engraft a somewhat appealing and equitable gloss on the statute, the basis for such interpretation was not supplied by Congress. As the majority has properly noted, any such reading of the statute can only be the result of further congressional action, not judicial fiat.