UNITED STATES of America, Plaintiff,

v.

**30 IRONWOOD COURT,**
et al., Defendants,

and

**Alan J. Schroeder, et al., Claimants.**

No. 89 C 8981.

United States District Court,
N.D. Illinois, E.D.

Sept. 23, 1991.

James A. Shapiro, Asst. U.S. Atty., Chicago, Ill., for U.S.

John A. Dienner, III, Matthias Lydon, Lydon & Griffin, Chicago, Ill., for defendants.

Barry N. Voorn, Evergreen Park, Ill., for First Nat. Bank.

William J. Peters, Frankfort, Ill., for Frankfort State Bank.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Both the United States and claimant Alan Schroeder ("Schroeder") have filed summary judgment motions under Fed. R.Civ.P. ("Rule") 56 in this civil forfeiture action under 21 U.S.C. § 881(a)(7),[1] which targets both Schroeder's residence at 30 Ironwood Court, Frankfort, Illinois and his law office at 111 Ash Street in the same city.[2] For the reasons stated in this memorandum opinion and order, the United States' motion is granted in its entirety.[3]

---

**1.** Further citations to provisions of Title 21 will simply take the form "Section—."

**2.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable"—in the light most favorable to the nonmovant (*Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). Where as here cross motions are involved, that principle thus demands a dual perspective—one that this Court

has sometimes described as Janus-like—that sometimes causes the denial of both motions. Fortunately that has not occurred here, because the one factual difference that Schroeder's counsel points to is not material (that is, outcome-determinative—*Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986)).

**3.** This opinion does not deal with the interests asserted by three other claimants: Caralee Miller, First National Bank of Evergreen Park and Frankfort State Bank. Each of them has a priority status over the United States, which can of course forfeit only Schroeder's property interest. That priority will be provided for out of the proceeds of sale of the properties.

## Facts

This action is based on the United States' claim that both Schroeder's house and his law office were real property "used ... in any manner or part ... to facilitate the commission of" federal felony drug offenses (the quoted language is drawn from Section 881(a)(7)). It has remained on the back burner for an extended period of time awaiting the resolution of Schroeder's state court prosecution on narcotics charges.[4]

Finally on August 13, 1991, Schroeder pleaded guilty in the Circuit Court of Will County to two counts of delivering cocaine to a 16–year–old boy (who was a client of Schroeder's in Juvenile Court proceedings), once at Schroeder's home and once at his law office. In the course of that guilty plea,[5] Schroeder admitted (Tr. 25, 27, 30, 31, 32) that on the first occasion he himself smoked some cocaine before giving .5 grams to the young man to take away with him from Schroeder's home (Tr. 20–22), while on the second occasion (in Schroeder's law office) both of them ingested cocaine and then Schroeder gave the boy another .1 gram (Tr. 22–23). On that second occasion police officers then executed a previously-obtained search warrant and retrieved both the residue of cocaine and the instruments used to ingest the substance. Later a search of Schroeder's home uncovered no additional drugs (except for cocaine residue in a glass vial), but the police did find drug paraphernalia (a pipe, a mirror, a razor blade and a screen) consistent with the personal consumption of drugs and not with drug trafficking as such.

As n. 2 indicates, there is one factual dispute between the United States and Schroeder. Schroeder says that the cocaine at his residence—both that used by him and the quantity delivered to the boy—had been brought to the house in a shoe that Schroeder was wearing. According to the United States (based on the boy's statement), however, Schroeder retrieved the cocaine from the inside of a shoe that was already in the home's kitchen—and had thus been stored there for some period of time. Because this Court has concluded that the United States prevails on the current motion, it has necessarily accepted arguendo Schroeder's version of the facts in that respect (see n. 2).

## Drug–Related Forfeitures

Although Schroeder has not been convicted of a federal drug offense (Section 881(a)(7) permits forfeiture of real estate used "to facilitate the commission of a violation of this title punishable by more than one year's imprisonment"), that is irrelevant under the circumstances here. By the very nature of his drug conviction in the state court and his admissions in the course of his guilty plea there, Schroeder has acknowledged that on each of the two occasions he *delivered* cocaine to the youngster (who, unknown to Schroeder, was then acting as a confidential informant to the authorities). That admission binds Schroeder as a matter of issue preclusion, and he wisely does not contest that here. And under Section 841(a)(1) *any* such delivery is a federal felony.[6]

4. Under the law a court has the power to proceed with forfeiture actions even while the claimant faces pending criminal charges stemming from the forfeiture-triggering conduct. Indeed, the claimant's invocation of Fifth Amendment rights in the civil forfeiture action (which is the likely result of pushing it ahead before the criminal case is tried) may well risk the likelihood that the government will prevail if it satisfies its burden of proof (see, e.g., this Court's opinion in *United States v. One 1985 Plymouth Colt Vista*, 644 F.Supp. 1546, 1552–53 (N.D.Ill.1986), relying on *United States v. Rylander*, 460 U.S. 752, 759, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983)). But that very prospect of a forced Hobson's choice frequently leads this Court to defer civil forfeiture proceedings if

there is no risk of deterioration of the property's value or other reason suggesting swifter action (cf. 729 n. 9 in the *6250 Ledge Road* decision discussed at greater length later in this opinion). Here the United States did not press the forfeitures pending the playing out of the string in the state court criminal prosecution.

5. This Court has been provided a transcript of the state court proceedings, in which Schroeder acknowledged the factual circumstances supporting each of the charges against him. Citations to that transcript will take the form "Tr.—."

6. Section 841(a)(1) makes it unlawful knowingly or intentionally to *distribute* a controlled sub-

Schroeder has offered no opposition to the forfeiture of his property interest in his law office, instead stating in his Reply Memorandum at 3 n. 1 that his interest in that property was transferred to his ex-wife Caralee Schroeder (now Caralee Miller, see n. 3) in connection with their dissolution of marriage proceedings.[7] No further time need be spent on that subject, then, for the United States is clearly entitled to forfeit Schroeder's interest in the property—whatever it may be.[8]

As to Schroeder's home, however, he advances two arguments. For one thing, he challenges the notion that the home was used to "facilitate" the delivery because he says it was only incidental and fortuitous that the delivery happened there rather than (say) on the street, in a car or anywhere else. As his second argument, Schroeder renews the contention that forfeiture of his home is disproportionate to the offense (an argument that he originally advanced when he moved to dismiss this action much earlier in its history).

As for the "facilitation" concept, both sides point—as they should have—to our Court of Appeals' opinion in *United States v. 916 Douglas Avenue,* 903 F.2d 490 (7th Cir.1990). Of course they cannot both be right, and in this Court's view the United States clearly has the better of it. In fact,

our Court of Appeals has just this month (in *United States v. 6250 Ledge Road,* 943 F.2d 721 (7th Cir.1991))[9] unequivocally reconfirmed the principles announced last year in *916 Douglas.*

▪ Unlike a number of other Courts of Appeal, which had read Section 881(a)(7) as requiring a "substantial connection" between the real estate and the drug transaction to permit forfeiture, *916 Douglas,* 903 F.2d at 492 found the statutory language "clear, straightforward and unambiguous." Accordingly our Court of Appeals rejected the recourse to legislative history that had generated the "substantial connection" holdings elsewhere (*id.*). In place of that standard, *916 Douglas, id.* at 493, 494 requires only that the relationship between the property and the drug felony be "more than incidental or fortuitous." Accord, *6250 Ledge Road,* 943 F.2d at 725–26.

▪ This case meets that test. If telephone conversations to and from a property to arrange for a drug delivery create the necessary more-than-incidental-and-fortuitous link (as *916 Douglas,* 903 F.2d at 494 held), then a fortiori the actual delivery of drugs *in* the premises sought to be forfeited must satisfy the statutory standard.

---

stance such as cocaine, and both the episodes to which Schroeder pleaded guilty—the one at his home and the later one at his law office—involved "distribution" of the controlled substance (that is, its delivery to another person). See III *Federal Criminal Jury Instructions of the Seventh Circuit* 117 (Committee on Federal Jury Instructions of the Seventh Circuit, published by West Publishing Co.1986).

7. Schroeder does not dispute that the property was "used ... to facilitate" a federal drug offense—the language of Section 881(a)(7). Schroeder's attachment to his Reply Memorandum of a Collateral Assignment form running to the then Mrs. Schroeder does not conform to the requirements of Rule 56(e) and can really be ignored as a matter of law. That need not be explored, however, for the reason explained in the text.

8. It is worth noting that even if the belatedly-submitted document referred to in n. 7 were to be taken into account, it reflects an assignment as collateral for other obligations, not an outright transfer of ownership. Unless Caralee Miller has herself interposed a claim in these

proceedings (see n. 3), nothing would seem to block a total forfeiture as to Schroeder's interest.

9. This Court has had occasion to remark in earlier opinions on the frequency with which its weekly reading of the newly-arrived batch of slip opinions from our Court of Appeals produces a serendipitous discovery: either language or an actual holding directly applicable to a problem that has been presented by a pending motion in a case on this Court's calendar. In this instance the timing was truly startling: This opinion had already been dictated on tape, even before receipt of Schroeder's Reply Memorandum (for this Court had concluded that Schroeder's version of the one fact in dispute had to be accepted in any event), and it was awaiting transcription by this Court's secretary when the current group of slip opinions was delivered to this Court's chambers. And that night's reading of the opinions uncovered *6250 Ledge Road,* with its remarkable relevance to most of the controlling principles discussed here.

It will not do to urge, as Schroeder does, that the delivery *could* have been made anywhere and that the use of the residence for that purpose was therefore incidental and fortuitous.[10] After all, the statutory word is "facilitate," suggesting anything that makes the transaction perhaps less difficult or less free from hindrance. That was the concept enunciated in *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir.1990) and quoted with approval in *916 Douglas*, 903 F.2d at 494.[11] Schroeder chose his home as the place to conduct the prohibited transaction—and given the very special place that our Fourth Amendment jurisprudence gives to a person's home, it cannot be gainsaid that carrying out an illegal transaction in the comparative privacy of one's home "facilitates" that transaction in any normal sense of the statutory term.[12]

*916 Douglas*, 903 F.2d at 494 (emphasis in original) teaches:

> Given these cases, the distinction between a "substantial connection" test and the "in any manner, or part" language offered directly in the statute is blurry at best. We believe the more principled and direct approach, and the one demanded by the plain wording of the statute itself, is to affirm forfeiture of any real estate that is used *in any manner or part* to commit or facilitate the commission of a drug related offense.

One of the cases *916 Douglas* quoted from in arriving at its conclusion was *United States v. 3639–2nd St., N.E.*, 869 F.2d 1093, 1096 (8th Cir.1989), which held—even under the less demanding "substantial connection" test—that "if persons 'make real property available as the situs for an illegal drug transaction, it is forfeitable.'" Schroeder must lose under the force of the *916 Douglas* precedent, which binds this Court.

■ As a fallback Schroeder argues that the value of the property to be forfeited is disproportionate to his offense—that in violation of the *Mikado* principle, the punishment does not fit the crime. Here his difficulty is that he must swim against the uniform tide of case law all across the country holding that civil forfeiture actions are not "punishments" but are rather remedial. That too is the lesson of a recent Seventh Circuit case, *United States v. On Leong Chinese Merchants Ass'n Building*, 918 F.2d 1289, 1296 (7th Cir.1990) and of the hot-off-the-presses *6250 Ledge Road*, 943 F.2d at 727.

Again this Court is bound by those square holdings. If the few dicta suggesting the possibility that a civil forfeiture case might go too far in that respect so as to trigger an Eighth Amendment proportionality analysis (Judge Cudahy's concurrence in *On Leong*, 918 F.2d at 1299; *United States v. Vriner*, 921 F.2d 710, 712 n. 4 (7th Cir.1991); and Judge Flaum's concurring opinion in *916 Douglas*, 903 F.2d at 495) are to be elevated to the status of a judicial holding, it must take place at the level of a higher court, not a District Court.[13]

---

**10.** As already stated at the end of the *Facts* section of this opinion, for present purposes this Court must credit Schroeder's version rather than that of the 16-year-old as to where Schroeder obtained the cocaine that he delivered to the boy in the residence—in other words, this Court must find that fact nonmaterial (that is, non-outcome-determinative). If it were established that the cocaine had been kept in the house as well as delivered there, the degree of linkage would appear to have been scarcely a subject for possible argument.

**11.** *Schifferli* expressed that notion in the context of applying a "substantial connection" criterion rather than the more generous "more than incidental or fortuitous" test announced by our Court of Appeals. It follows that the principle

applies a fortiori under the Seventh Circuit's reading of Section 881(a)(7).

**12.** It is worth noting, though it is not vital to this decision, that Schroeder is (or at least was before his current criminal conviction) a lawyer.

**13.** In terms of swimming against the tide, this Court is also constrained to remark on the highest Court's most recent reluctance to extend the concept of Eighth Amendment disproportionality, even in the criminal-case context, beyond the death-penalty situation (*Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 2701–02, 115 L.Ed.2d 836 (1991)). That would not seem to hold out much hope in that respect for the civil forfeiture claimant (though it is true that some

## Conclusion

There is no genuine issue of material fact, and the United States is entitled to a judgment as a matter of law. Because the necessary next step is to implement the forfeiture under Section 881(a)(7), the parties are directed to submit the proposed form of judgment order (or if they have not agreed on such a form, their respective proposed versions) in this Court's chambers on or before September 27, 1991. This action is set for a status hearing at 8:45 a.m. September 30, 1991.[14]

current jurisprudence does seem to elevate property interests to a higher level than liberty interests).

14. If at all possible, this Court would hope to enter a final order at that time. Even if that were not to prove possible, counsel would be expected to appear in any case to discuss the necessary procedures and anticipated timing for entry of the final order.