**UNITED STATES of America, Plaintiff,**

v.

**1990 TOYOTA 4RUNNER, etc., Defendant.**

**No. 92 C 4062.**

United States District Court, N.D. Illinois, E.D.

Sept. 10, 1992.

William Huyck, Chicago, Ill., for plaintiff.

Jack Donatelli, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This case presents a variant on the types of drug-related forfeiture actions most frequently brought by the United States. Claimant Abiodun Oloko ("Oloko") has moved to dismiss the forfeiture as bearing too attenuated a connection to the substantive drug offense to bring the relevant statute, 21 U.S.C. § 881(a)(4),[1] into play. For the reasons stated in this memorandum opinion and order, Oloko's motion is granted and this action is dismissed.

*Statutory Forfeiture Provisions*

Although only the vehicle forfeiture subsection of Section 881 is implicated here, it is also instructive to look (at least for comparative purposes) at other portions of the statute that place a fatal taint on property other than (1) the controlled substances themselves (which are covered by Section 881(a)(1)) and (2) materials integrally related to the production, importation or exportation of the controlled substances (those related materials are covered by Section 881(a)(2) and (9)). Here are the other forfeiture provisions:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> \*   \*   \*   \*   \*   \*

1. Further references to the statute will simply take the form "Section 881."

(3) All property which is used, or intended for use, as a container for property described in paragraph (1), (2), or (9).

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9), [with exceptions not relevant here].

\* \* \* \* \* \*

(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation [of the federal felony drug laws].

*Application of the Forfeiture Provisions*

Forfeiture of course stems from the ancient notion that tangible property (or intangible property such as money) may itself become imbued with the evil that makes certain substantive conduct unlawful. As a result the property itself is made the defendant in the action, and no one can acquire ownership of that property because of its contraband nature (see, e.g., *Caplin & Drysdale v. United States*, 491 U.S. 617, 627, 109 S.Ct. 2646, 2653, 105 L.Ed.2d 528 (1989), with its reference to the "taint theory" that "has long been recognized in forfeiture cases").

Courts tend to apply the Section 881 forfeiture provisions—despite the harshness of their operation—with a broad brush, no doubt in part to create a powerful deterrent by stepping up the risks that are attendant on dealing in drugs. In the case of real property, where the only requirement for forfeiture is that the realty has been "used, or intended to be used, in any manner or part, . . . to facilitate the commission of" a drug offense, all that the government must demonstrate is a nexus to the offense that is "more than incidental or fortuitous" (*United States v. 916 Douglas Ave.*, 903 F.2d 490, 493 (7th Cir.1990)). This Court

has spoken in much the same tongue, applying such a forfeiture to a situation of first impression—a firmly-grounded mobile home linked to a drug transaction (*United States v. 30 Ironwood Court*, 776 F.Supp. 1242, 1244 (N.D.Ill.1991)).

Where conveyances are at issue under Section 881(a)(4), rather than real property under Section 881(a)(7), broad application of the statute has again been the order of the day. It is thus not necessary to seize the automobile with a controlled substance in the trunk or the glove compartment or concealed in rocker panels or seat cushions—or even with the driver or passenger carrying contraband on his or her person. It has been enough for example that the vehicle was used to travel to or from the scene of the drug transaction (as in this Court's opinion in *United States v. $10,000 U.S. Currency*, 521 F.Supp. 1253, 1255–57 (N.D.Ill.1981), *aff'd sub nom. United States v. Fleming*, 677 F.2d 602, 609–10 (7th Cir.1982)).

But the tie between controlled substances and the putative forfeited vehicle here is more attenuated than that. There was no packet of drugs at or even close to either end of the trip—instead the Complaint's only allegation is that Oloko, who has pleaded guilty to a charged conspiracy to import heroin, used the 1990 Toyota to take him to and from a meeting at which the planned future illegal activity was discussed (Complaint ¶ 5):

Specifically, Oloko drove the defendant vehicle, a 1990 Toyota 4Runner, VIN JT 3VN39W5L8008363, Illinois License Number YNG 734, to and from a meeting where he discussed with others in the conspiracy the plans to send a courier to a foreign country to pick up heroin and bring that heroin back to Oloko in the United States.

Nothing suggests any contemplated use of the vehicle in or in direct conjunction with any of the *acts* that are enumerated in Section 881(a)(4) as the objects of the verb "facilitated": "transportation" or "sale" or "receipt" or "possession" or "concealment" of the drugs.

No, the government must rely instead on the notion that driving a car to a meeting where the driver then talks about transactions in contraband renders the car itself contraband because it has "facilitate[d]" the future "transportation" or "sale" or so on. But the meeting was in a restaurant, not in the car itself (in the latter situation the car might have been said to "facilitate" a drug deal by insulating the conversation from any potential eavesdroppers, thus making the planning of the transaction less detectable). Here Oloko's use of the car really had nothing to do with the drug transaction itself, or even with making the meeting (let alone the anticipated drug deal) easier to carry out.

"Facilitate" is a word of causation.[2] Courts are regularly called on to make legal distinctions based on the notion that some directness of causation is required to impose liability for the consequences of an act—a distinction that normally carries the label of "proximate cause." Thus in a somewhat different context, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) has quoted with approval this language from Prosser & Keeton, *Law of Torts* § 41, at 264 (5th ed. 1984):

> In a philosophical sense, the consequences of an act go forward to eternity.... As a practical matter, legal responsibility must be limited to those cases which are so closely connected with the result and of such significance that the law is justified in imposing liability.

Although *916 Douglas Ave.*, 903 F.2d at 493–94 has disavowed a "substantial connection" test for forfeiture (at least as to Section 881's real estate subsection [3]), the application of its "more than incidental or fortuitous" approach to the Toyota in this case and to what the vehicle did or did not "facilitate" draws on notions comparable to those embraced in *Cooter & Gell.* Even under the reading of the somewhat broader target of the statutory "facilitate" provision as to real estate, as construed and applied by our Court of Appeals in *916 Douglas Ave.* and by this Court in *30 Ironwood Court*, Oloko's use of the automobile here has to be perceived as bearing a "nexus [no] more than incidental or fortuitous" in relation to the later-contemplated drug offense (*916 Douglas Ave.*, 903 F.2d at 494). And the only explicit reference to the forfeiture of conveyances contained in Section 881's legislative history supports that conclusion: H.R.Rep. No. 91–1444, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 4566, 4623 indicates that they are subject to forfeiture only if they are "used, or intended for use, to transport or conceal such violative property."

This Court finds a case such as *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421 (2d Cir.1977) to be result-oriented rather than analytic in that respect. This Court's analysis of the relevant statutory language, and of our own Court of Appeals' application of that provision and the other (real property) subsection of the forfeiture statute in such cases as *Fleming* and *916 Douglas Ave.*, leads it to conclude that the Seventh Circuit would not wield the slapdash brush applied by the Second Circuit, but would opt instead for a more rational reading (as exemplified, for instance, by *United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026, 1028–30 (1st Cir.1980)).[4]

---

**2.** *Webster's Third New International Dictionary* 812 (1986) reflects the common-usage common-sense meaning of the transitive verb:

> To make easier or less difficult: free from difficulty or impediment.

**3.** This Court will assume that a "substantial connection" standard is equally inapplicable to vehicles and other conveyances sought to be forfeited. But this Court, like our Court of Appeals in *916 Douglas Ave.*, is called on to apply "the plain language of this statute" (*id.* at 493)—in the present case looking to the somewhat different text of Section 881(a)(4)—and for that pur-

pose this Court reads both the verb "facilitate" and the statutory objects of that verb rationally.

**4.** *United States v. One 1976 Ford F–150 Pick–Up*, 769 F.2d 525, 526–27 (8th Cir.1985) collects cases in this general area, but this Court does not rest its conclusion on the holding there (which applies the "substantial connection" test rejected by our Court of Appeals in *916 Douglas Ave.*). All the same, the Eighth Circuit's approach—quite apart from that test—is also a more reasoned effort to explore the statutory meaning than that of the Second Circuit.

500

### Conclusion

There is an insufficient nexus between the 1990 Toyota sought to be forfeited here and the contemplated drug transaction in which Oloko was involved to justify characterizing the Toyota as having "facilitate[d] the transportation, sale, receipt, possession or concealment" of the latter. This action is dismissed.