In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4082

United States of America,

Plaintiff-Appellee,

v.

5 S 351 Tuthill Road, Naperville, Illinois,

Defendant,

Appeal of:  John Bochnewych,

Claimant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 97 C 8887--James F. Holderman, Judge.

Argued May 15, 2000--Decided December 5, 2000

Before Flaum, Chief Judge, and Cudahy and
Evans, Circuit Judges.

Cudahy, Circuit Judge.  On September 27,
1997, DuPage County Sheriff's Deputy
Lance Todd responded to a complaint of
barking dogs on Tuthill Road in
Naperville, Illinois. At the address
reported, he found a dilapidated house.
Deputy Todd called the sheriff's office
and learned that Peter Boch was the owner
of the property at 5 S 351 Tuthill Road.
Boch had been arrested and convicted for
possession of cannabis earlier that year.
Claiming a concern for the health of the
occupants, Deputy Todd and Deputy James
Mendrick entered the residence. Inside,
the deputies found ten closed ziplock
bags containing a green leafy substance,
another ziplock bag containing partially
opened ziplock bags also holding a green
leafy substance, a scale, a loaded Marlin
30/30 lever action rifle and about
fifteen discharged shotgun cartridges. In
the basement they found three plant
growing lights hanging from the ceiling,

and a dozen ceramic pots filled with soil and connected to canisters of carbon dioxide gas.

Later that day the officers obtained and executed a search warrant for the house. They seized several bags of leafy material, two containers of plant food, twenty-three plant pots with soil, timers, several plant growing lamps, packaging materials, a triple beam scale, seeds packaged in small containers, and an air heater. The leafy material was determined upon analysis to be eight pounds of marijuana. The quantity of marijuana and paraphernalia found in the home were determined to be consistent with manufacturing and distributing marijuana.

On December 23, 1997, the United States filed a verified complaint for forfeiture under 21 U.S.C. sec. 881(a)(7). The property to be forfeited may have looked like a typical residence to the average viewer. But it is, legally, unique in ways that complicated the forfeiture process. First, the property is legally described as "Lots 14 and 15 in Block 3 of Arthur T. McIntosh Co.'s DuPage Farms," and each lot, or parcel, bears a different permanent index number in the DuPage County tax assessment records. The residence is located on parcel number 08-08-202-012. Parcel 08-08-202-013 is vacant. The two parcels are taxed separately.

Further, although Peter Boch purchased both parcels together, and paid $25,000 to his wife upon their divorce to obtain her interest in the property, Boch had since tried to distance himself from the vacant half of the land. On October 8, 1985, Boch placed the vacant half of the land in trust, and that same day transferred his interest in the trust to his father, John Bochnewych. A Naperville bank serves as trustee. Shortly after the trust was created, in December of 1985, a confidential informant identified Boch as a multi-kilogram distributor of cocaine in Illinois.

The relevant terms of the trust state:

The interest of each and every beneficiary hereunder and of all persons claiming under them or any of them shall be only in earnings, avails, and proceeds

arising from the sale or other disposition of said real estate and each interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said real estate as such, but only an interest in the earnings, avails and proceeds thereof as aforesaid.

The trust instrument further states that the trustee shall have, among other things:

[f]ull Power and authority . . . to improve, manage, protect, and subdivide said premises or any part thereof . . . to contract to sell, to grant options to purchase, to sell on any terms, to convey, either with or without consideration, to convey said premises or any part thereof to a successor or successors in trust and to grant to such successor or successors in trust all of the title, estate, powers and authorities vested in said trustee, to donate, to dedicate, to mortgage, pledge or otherwise encumber, said property, or any part thereof, to lease said property or any part thereof from time to time . . . .

Gov't Resp. to Claimant's Motion to Quash and Suppress, Ex. 4A (hereinafter Trust Agreement).

Boch possesses all of the deeds, contracts, insurance policies and other official documents relating to the property. Boch secured a mortgage on the property and made the payments. Boch also paid the taxes and utilities on the property. Additionally, Boch permitted friends and acquaintances to store their vehicles on the vacant land without securing his father's permission for them to do so.

Bochnewych had not been inside the house on the defendant property for approximately twenty years and believes it to have been vacant since 1994. Bochnewych stated that he does not know any details of the mortgage. Bochnewych is unaware of the dates of any leases or rentals of the property, and the only information he could provide was, "I know [Peter] rented [it]." Appellant's Motion to Dismiss, Ex. B at 17 (hereinafter Bochnewych Dep.). Bochnewych never

received any rent on the property. Bochnewych stated that he does not know what obligations or rights Boch retained after placing the property in trust.

Bochnewych claims to have known nothing about the illegal activity on the property. When asked whether he did anything to assure that the use of the property was legal Bochnewych stated, "I don't know that. It's all [Peter's]." Id. at 60.

In October of 1997, Boch contracted to sell the property to William and Mayling Tein. The contract did not mention Bochnewych or the trust and Bochnewych did not sign the agreement. On the other hand, Bochnewych did execute, along with Boch, a direction to the trustee to convey the property to William Tein. The sale was never completed because of a lien on the property.

Bochnewych contested the forfeiture, claiming he was the owner of the vacant parcel, and an innocent owner at that. Based on his professed innocent ownership, Bochnewych moved to quash the search warrant regarding the property at 5 S 351 Tuthill Road and to suppress the evidence obtained by the search. The district court denied the motion.

The parties filed cross motions for summary judgment. The district court denied Bochnewych's motion for summary judgment due to his failure to submit a Local Rule 12(M) statement. Because of this failure, the district court deemed the facts in the government's Local Rule 12(M) statement admitted. Based on those facts the district court found that Bochnewych lacked Article III standing to contest the forfeiture and granted the government's motion for summary judgment. The district court denied Bochnewych's motion for reconsideration and made a final entry of judgment of forfeiture. Bochnewych appeals from the judgment granting the government's motion for summary judgment and the denial of Bochnewych's motion for summary judgment. The decree of forfeiture to the United States was made subject to the interests of Allegiant Bank, FSB, the holder of a mortgage interest in the property, and subject to the interest of the DuPage County Treasurer in the unpaid real estate taxes on the property.

I.  Article III Standing

   We must first resolve whether Bochnewych, as the beneficiary of a land trust, has standing to challenge the government's effort to forfeit the land that is the subject of the trust. Bochnewych's standing to contest the forfeiture is a question of law, which we review de novo. See United States v. 5000 Palmetto Drive, 928 F.2d 373, 375 (11th Cir. 1991).

   In order to decide whether Bochnewych's interest in the land gives rise to standing, we must clarify what that interest is. State law defines and classifies property interests for purposes of the forfeiture statutes, while federal law determines the effect of the property interest on the claimant's standing. See United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996). The garden variety Illinois land trust gives trust beneficiaries "full powers of direction and control," and deems these rights to be personal property. Quinn v. Pullman Trust & Sav. Bank, 98 Ill.App.2d 402, 404 (1968). Had Boch set up such a trust here, the case would be easier because Bochnewych would essentially be the owner of the property. That was the situation the Fourth Circuit confronted in United States v. Santoro, 866 F.2d 1538 (4th Cir. 1989). Upon divorcing his wife, a man conveyed his one-half interest in property to his wife with the understanding that it would be used for the maintenance and education of the children. See id. at 1544. The court concluded that the children were beneficial owners of one-half of the property, and therefore had standing. See id. at 1545.

   But Boch appears to have established an unorthodox land trust. While beneficiary Bochnewych has an interest in the "earnings, avails, and proceeds arising from the sale or other disposition of said real estate," the beneficiary does not have the power to manage, lease or sell the property. Moreover, a trust provision permits the trustee to sell the property "on any terms, with or without consideration." So unlike the children in Santoro, whose trustee presumably had an obligation to maximize the proceeds from the land, Bochnewych's trustee may sell

the land for a peppercorn if he wishes. It is not exactly right, therefore, to call Bochnewych a beneficial owner of the land. This was essentially the basis for the district court's decision; it reasoned that because Bochnewych did not have legal or equitable title to the real estate itself, he could not have standing. See Mem. at 8-9. But the fact remains that should the property be sold for any amount of money, that money is due to Bochnewych. So Bochnewych's interest is a right to future proceeds of unknown value. Does that interest establish that Bochnewych has Article III standing? We answer that question by reviewing the purpose of Article III standing.

Under Article III of the Constitution, the federal judicial power extends only to "cases" or "controversies." This limitation on judicial power assures that courts play a "proper--and properly limited--role . . . in a democratic society." Family & Children's Ctr., Inc. v. School City of Mishawaka, 13 F.3d 1052, 1058 (7th Cir. 1994) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). To satisfy Article III, a plaintiff must allege (1) an immediate threat of injury; (2) fairly traceable to the defendant's conduct; that (3) a favorable federal court decision likely would redress or remedy. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992). There is no question that prongs two and three are met in this case. The dispute is whether Bochnewych, who does not own or control the land or its sale price, faces an immediate threat of injury if the land is forfeited. We have described the Article III standing requirements as "undemanding." Family & Children's Ctr., 14 F.3d at 1058. It is instructive in this case to review the injuries that are not sufficiently "concrete or particularized" to establish standing. Id. at 560-61. We have stated that a plaintiff who has merely an "intellectual or academic curiosity" in the outcome of a suit does not have standing. S. E. Lake View Neighbors v. Dep't of Hous. and Urban Dev., 685 F.2d 1027, 1033 (7th Cir. 1982). "Purely psychological harm" suffered by a plaintiff is not sufficient to establish standing. Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463, 1467 (7th Cir. 1988). Similarly, "simple indignation," or an impact on

"one's opinions, aspirations or ideology" do not suffice to establish standing. Harris v. City of Zion, 927 F.2d 1401, 1405 (7th Cir. 1991) (quoting in part People Organized for Welfare and Employment Rights v. Thompson, 727 F.2d 167, 171 (7th Cir. 1984)). But, if the Naperville residence is forfeited, Bochnewych will suffer an injury that is more than intellectual, psychological or ideological. He will lose the opportunity to receive the proceeds, if and when the land is sold. We think this is more than enough to give him an actual stake in the outcome of the suit, and to make his dispute with the government a genuine "case or controversy" justifying our exercise of judicial review.

We recognize that this conclusion may appear to be in tension with those of some sister circuits, which have held that in the unique setting of drug-related forfeiture cases, a plaintiff does not have a stake in the outcome of the dispute--even if he is ostensibly the owner--unless he exercises "dominion and control" of the res. See, e.g., United States v. 526 Liscum Dr., 866 F.2d 213, 217 (6th Cir. 1989); United States v. 900 Rio Vista Blvd., 803 F.2d 625, 630 (11th Cir. 1986); United States v. One 1945 Douglas C-54 (DC-4) Aircraft, 604 F.2d 27 (8th Cir. 1979). Using this "dominion and control" formulation, the Ninth Circuit held in a case similar to the one before us today that where a man gave his father-in-law title to land, but continued to pay property taxes, to manage the rental property and to control access to the land himself, the father-in-law did not have a sufficient interest to give rise to standing. See United States v. Vacant Land, 15 F.3d 128, 130 (9th Cir. 1993). The court explained that "[t]hese cases turn on a finding that the title holder is a strawman holding nominal title as a subterfuge for a drug trafficker, rather than being a true owner of an interest in the property." See id.

As a matter of public policy, we can see the reason for closing courts to these claims of nominal owners, because they are in furtherance of an illegal and socially destructive purpose. But the social imperatives at work in these cases hardly justifies characterizing the problem as one of constitutional standing. We require a plaintiff to

demonstrate standing in order to assure that we are refereeing an actual, rather than a hypothetical, dispute. See Lujan, 504 U.S. at 560-61. Indeed, we police a plaintiff's standing precisely to ensure that we are acting as a court, rather than as "ombudsmen of the general welfare," a role more properly ascribed to Congress. Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 487 (1982). It seems to us that in scrutinizing a would-be forfeiture plaintiff's interest for evidence of straw ownership, courts are not policing their own exercise of power, but policing those whom they perceive to be doing the bidding of drug traffickers, by refusing to provide an avenue of legal redress. One might call it judicial abdication in the service of judicial activism. Cf. Marrese v. Am. Acad. of Orthopaedic Surgeons, 726 F.2d 1150 (7th Cir. 1984) (dissenting opinion).

The "dominion and control" inquiry as applied to Bochnewych's claim seems to focus more on the prudential dimension of standing than the "injury-in-fact" dimension. Even under the former heading, we think the more stringent test is misguided on the present facts. The legislative history of forfeiture law "indicates that a rather expansive 'zone of interests' is protected by the innocent owner provision." United States v. U.S. Currency, $81,000, 189 F.3d 28 (1st Cir. 1999). Moreover, we note that both the Supreme Court and the Congress have recognized the potentially draconian reach of the civil forfeiture laws, in the years since our sister circuits adopted the "dominion and control" test for forfeiture cases. In April of this year, Congress passed the Civil Asset Forfeiture Reform Act of 2000, which requires the government to prove the connection between the property to be forfeited and the drug activity by a preponderance of the evidence, rather than to prove merely probable cause to believe there is a connection. See Pub. L. No. 106-185, 114 Stat. 202 (2000). And several years ago, the Supreme Court issued a trilogy of opinions truncating the long arm of civil forfeiture. See United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993) (holding that owners are entitled to court hearings before government may seize allegedly

drug-tainted property); Austin v. United States, 509 U.S. 602 (1993) (holding that the Excessive Fines Clause applies to civil forfeitures); United States v. Parcel of Land Known as 92 Buena Vista Ave., 507 U.S. 111 (1993) (upholding the innocent owner defense). In light of the other branches' calls for rational application of the useful tool of civil forfeiture, we think it particularly imprudent to adopt without a specific reason a test that appears to increase the harshness of the forfeiture remedy. So we will hew to the traditional "actual stake in the outcome" test in analyzing whether Bochnewych has standing to challenge the government in this case. The facts suggest that he does have a sufficient interest in the land to give him an actual stake in the outcome of this dispute, even though he may not own, dominate or control the land.

Two cases are particularly instructive in reaching this conclusion. In both, the would-be plaintiff, like Bochnewych, stood to gain money indirectly from the outcome of a dispute between two other parties. In both, we concluded that the third party had standing to sue based on the other parties' dispute. In Family & Children's Ctr., Inc. v. Sch. City of Mishawaka, 13 F.3d 1052 (7th Cir. 1994), we held that a facility with physical (but not legal) custody of children with disabilities had standing to sue the local school district for allegedly withholding special education funds from the children. Although the dispute was properly between the children (or their parents) and the school district, we held that if the school district did turn over funds for the children, the child care facility would benefit financially, and therefore it, too, had standing. See id. at 1059. Similarly, in Amato v. Wilentz, 952 F.2d 742 (3d Cir. 1991), the Third Circuit held that a county had standing to sue the state's chief justice for a First Amendment violation when the chief justice denied a movie company permission to film in the county courthouse. The Third Circuit agreed with the county that although the chief justice directly hurt the movie company, the county was indirectly hurt because it lost out on the $250,000 rental fee the movie company had promised it. Therefore, the county had a right to sue the chief justice. "That is our standing. We want the

money," the county told the court. See id. at 747 n.5.

Just so here. Although the facts before us suggest that Peter Boch may have had dominion and control of the vacant property, that does not mean his father had no stake in the outcome of the forfeiture dispute. John Bochnewych has, according to the terms of the trust, the right to any proceeds realized from the sale of the property. That is his standing. He wants the money, or at least the legal right to it should the property be sold. Of course, we recognize that Bochnewych may have extinguished that right if he participated in or endorsed his son's drug operation. So the real issue in this case is whether Bochnewych can be implicated in the drug activity. We think it best to confront the issue of Bochnewych's role in the offense head-on rather than evade it by barring him from the courthouse. We therefore reverse the district court, and hold that Bochnewych has standing to contest the government's forfeiture efforts in this case.

## II.  Severance of Land

This leaves us with the question whether Bochnewych may block the forfeiture of the vacant half of the land because it is a separate parcel on which no drug activity has occurred or because--even if it was the site of drug activity--he is an innocent owner. The district court did not analyze these issues in its opinion, since it decided Bochnewych did not have standing. Indeed, Bochnewych himself devoted just one paragraph of his six-page motion for summary judgment to the argument that the parcels were severable. In its cross-motion for summary judgment, the government never squarely addressed the argument that the parcels should be severed for forfeiture purposes. On appeal, Bochnewych does not ask us to decide this issue, but only asks that the case be remanded for a trial on the issue. The government urges us to affirm the district court's grant of summary judgment in its favor. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A

genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The forfeiture statute broadly states that "[a]ll real property, including any right, title, and interest in the whole of any lot or tract of land . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a drug offense is forfeitable. 21 U.S.C. sec. 881(a)(7). In a civil forfeiture proceeding under the law in effect at the time of this forfeiture, the government must show probable cause that the property is subject to forfeiture. Once the government has made this showing, which has been defined as "reasonable grounds for belief of guilt, supported by less than prima facie proof but more than mere suspicion," United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1434 (9th Cir. 1985), the burden shifts to the claimant to prove by a preponderance of the evidence that the property was not unlawfully used or that he did not know about or consent to the illegal use. See United States v. 7715 Betsy Bruce Lane, 906 F.2d 110 (4th Cir. 1990).

In this circuit, we consider property forfeitable if its connection to the underlying drug transaction is "more than incidental or fortuitous." United States v. 916 Douglas Ave., 903 F.2d 490, 494 (7th Cir. 1990). However, we have stated that our test is only semantically distinguishable from the "substantial connection" test used in other circuits. See 916 Douglas Avenue, 903 F.2d at 494. Therefore, we may survey cases inside and outside our circuit for guidance in determining whether the Boch property is severable from the Bochnewych land held in trust.

In United States v. Santoro, 866 F.2d 1538 (4th Cir. 1989), the court considered farm property held by a single owner (whose children were beneficial owners of one-half the entire property by virtue of a trust) bisected by a road and taxed as two separate parcels. The legal

description of the property treated the whole of the land as one unitary tract. The drug transactions leading to forfeiture had taken place on the smaller of the two portions of the land, but the government was permitted to forfeit all of the land. The court reasoned that the property was legally described as a single tract, despite the existence of the road and the fact that the two portions were taxed separately. Further, the land was held by a single owner who, when she designed a trust to benefit her children, placed the entire piece of property in trust.

The scenario we confront today is different enough that we cannot say as a matter of law that this house and this vacant lot were part of one unitary property. DuPage County taxes the house and the lot using two different identification numbers. Even the legal description of the property known as 531 S Tuthill Road refers explicitly to "Lots 14 and 15." Perhaps most critically, Boch placed the vacant lot, but not the house, in trust. This key fact distinguishes the case sharply from Santoro, where the owner placed the entire lot in trust. Where the owner has treated the property as unitary, it seems appropriate for the court to do so. But here, owner Boch has treated the two parcels as discrete, retaining one and legally distancing himself from the other. And we are missing key facts that will likely help the district court decide whether the parcels are truly unitary or truly divisible. In particular, there is no indication in the record how this--or these--properties are configured. Are we talking about a house and adjacent yard? Or are we talking about a house located next to a separate lot on which a second house could be constructed?/1 The record, as it stands currently, does not shed enough light on these issues to justify the grant of summary judgment for either party on the severance issue.

III. Innocent Ownership

One related issue remains. Bochnewych argued in his motion for summary judgment below, and on appeal, that he is an innocent owner. On appeal, the government has argued that drug activity took place in the house and that the trust parcel "was directly adjacent to the [house]." Appellee's Br. at 15. The government also

notes that Boch paid the taxes, utility bills and mortgages on both parcels. It concludes that "there were reasonable grounds to believe there was a nexus between [the vacant lot] and the activity taking place [next door]." Id. We suspect that when the district court takes this case on remand, it may require more in the way of evidence tying the vacant lot to the house, although this may depend on whether the house and the lot are found to be a single property or two separate properties. We are influenced in part by the fact that Congress, in its recent forfeiture reform initiative, raised the quantum of proof for connecting a forfeiture target with drug activity from probable cause to preponderance of the evidence./2 In the present case, there is nothing in the record to show that the vacant lot was the site of drug transactions, was used to grow drugs or was used to shield drug activity next door. There is only the allegation that the lot was located next to the drug cultivation center, and was maintained by Peter Boch.

In any event, should the government satisfy the district court that the vacant lot was connected to the drug activity, Bochnewych will then have the opportunity to prove by a preponderance of the evidence that he was an innocent owner; that is, that he did not know about or consent to the illegal use. See United States v. 7715 Betsy Bruce Lane, 906 F.2d 110 (4th Cir. 1990). The government implies that Bochnewych consented to Boch's use of the land by wholly neglecting to monitor it, visit it or even inquire about it with his son. Recall that when asked if he had taken any steps to assure that "his" land was used lawfully, Bochnewych replied "I don't know that. It's all [Peter's]." Bochnewych Dep. at 60. While Bochnewych was obviously not a hands-on trust beneficiary, we think it is a slight stretch to interpret this statement as consent to the operation of a drug enterprise sufficient to withhold the innocent owner defense from Bochnewych as a matter of law. If Bochnewych has not been on the land for twenty years, it is possible, though perhaps not probable, that he did not know about the drug activity. And although Bochnewych's deposition suggests a certain paternal indulgence, we are reluctant to transmute

as a matter of law that all-too-human tendency into consent for his son to run a drug operation on the land. We think that a factfinder would be better off hearing Bochnewych's live testimony in order to decide whether the father knew of or endorsed his son's activity, and therefore whether the innocent owner defense is available to him.

In sum, we reverse the grant of summary judgment in favor of the government on the Article III standing issue. And we decline to affirm the grant of summary judgment based on conclusions that the property is indivisible and Bochnewych was not an innocent owner. We remand the case to the district court for further proceedings on the issues of property indivisibility and innocent ownership in accordance with this opinion.

/1 Not coincidentally, the divisibility of the properties may strengthen or weaken Bochnewych's interest in the property. For instance, if the parcel in trust for him is merely a yard, it is unlikely to have much market value absent the accompanying house. In such a case, it would best serve the goals of forfeiture to treat the land as one because the house that served as the drug cultivation center dominated the land. And it would harm Bochnewych very little because his property would be nearly unsalable. But if the parcel in trust is a wholly autonomous lot, then it is both less apparent that the drug activity in the neighboring house tainted it, and more apparent that Bochnewych has something of value, because the property could be sold notwithstanding the forfeiture next door.

/2 Under the Civil Asset Forfeiture Reform Act of 2000, the burdens of proof have been reallocated, so that the government must prove the connection between the property to be forfeited and the drug activity by a preponderance of the evidence. The Supreme Court explained in Landgraf v. USI Film Products that although retroactive application of statutes is usually disfavored, in some situations, "a court should 'apply the law in effect at the time it renders its decision.'" 511 U.S. 244, 272 (1994) (citing Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 711 (1974)). Retroactive application is particularly appropriate where a procedural rule is changed after a suit arises "[b]ecause rules of procedure regulate secondary rather than primary conduct . . . ." Landgraf, 511 U.S. at 275. The decision whether to apply a new procedural rule "ordinarily depends on the posture of the particular case." Id. at 275 n.29. The district court knows the

posture of this case best, and is in the best position to decide whether the old or new regime should apply on remand.